**Thomas HOOKS, a minor, by Harlin Hooks, his father and next friend et al., Appellants,**

v.

**WASHINGTON SHERATON CORPORATION, a corporation et al.**

**No. 79–1899.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1980.
Decided Oct. 10, 1980.

---

David J. Letvin, East St. Louis, Ill., with whom Rex Carr, East St. Louis, Ill., and Morton J. Frome, Kensington, Md., were on brief, for appellants.

Allen R. Snyder, Washington, D. C., with whom John P. Arness and Gary V. Dixon, Washington, D. C., were on brief, for appellees.

Before TAMM and MIKVA, Circuit Judges, and GERHARD A. GESELL,* United States District Judge for the District of Columbia.

Opinion for the court filed by Circuit Judge TAMM.

Dissenting opinion filed by Circuit Judge MIKVA.

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

TAMM, Circuit Judge:

In this case, we must decide whether an express determination of finality is required before interest may accrue on a judgment entered while third–party claims remain pending. United States District Judge Oliver Gasch ruled that interest may not accrue in the absence of such a determination. We agree and affirm.

I.

Following an unfortunate swimming pool accident at the Sheraton Park Hotel in Washington, D. C., Thomas Hooks and his parents brought suit against the Washington Sheraton Corporation and the ITT Sheraton Corporation of America (Sheraton) and against the Paddock Swimming Pool Company and the Paddock Pool Construction Company, Incorporated (Paddock), alleging liability based on improper construction and maintenance of the pool. Paddock filed third–party complaints against its insurers, Hanover Insurance Company and Continental Casualty Company, claiming that the insurers were obligated to defend Paddock in the action and to indemnify Paddock for any liability that might be incurred. Prior to trial, the district court granted summary judgment for the insurance companies on Paddock's third–party claims, but then agreed to Paddock's request that it reconsider those summary judgment rulings. Thus, the third–party claims had not been finally determined at the time the trial was held.

The jury returned a verdict for $7,000,000 in favor of plaintiffs and against Sheraton. The jury absolved Paddock of any responsibility for the accident. On May 27, 1975, the same day as the jury verdict, the district court clerk entered judgment on the verdict pursuant to Rule 58(1) of the Federal Rules of Civil Procedure.

Sheraton filed a motion for a new trial or remittitur and, on July 2, 1976, the district court ruled that it would order a new trial unless plaintiffs filed remittiturs of all damages in excess of $4,680,000. Plaintiffs

agreed to accept the reduced recovery. On July 30, 1976, the district court entered final judgment on that amount pursuant to rule 54(b).

Plaintiffs made a timely request that interest accrue from the date of the jury verdict and clerk–entered judgment, but the district court held this request in abeyance pending resolution of Sheraton's appeal on the questions of liability and damages. On that appeal, this court affirmed the judgment as entered after the remittitur, but did not address the question of interest. *See Hooks v. Washington Sheraton Corp.*, 578 F.2d 313 (D.C.Cir. 1977).

After this court's affirmance, plaintiffs renewed their request to the district court for interest from the date of the jury verdict and clerk–entered judgment. On July 19, 1979, the district court denied plaintiffs' motion. The court noted that there had been third–party claims pending at the time the judgment had been entered by the clerk and that there had been no express court finding under rule 54(b) that the judgment would be final despite the presence of those third–party claims.[1] Plaintiffs filed a timely appeal from this decision.

## II.

Plaintiffs seek interest for the time period from May 27, 1975, the date of their jury verdict and clerk–entered judgment, until July 30, 1976, the date on which the district court entered a final judgment under rule 54(b). Under section 1961 of title 28, interest is calculated "from the date of the entry of the judgment." 28 U.S.C. § 1961 (1976). The language of this statute, however, does not define when an entry of judgment is deemed to have occurred in a case such as the one before us, and so we must seek other guidance.[2]

The parties agree that the appropriate reference point, if applicable, is rule 54(b), which provides a method for determining when a judgment is final in cases involving multiple claims. *See Caputo v. U. S. Lines Co.*, 311 F.2d 413, 416–17 (2d Cir.), *cert. denied sub nom. Imparato Stevedoring Corp. v. United States Lines Co.*, 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963); 10 C. Wright & A. Miller, Federal Practice & Procedure § 2661, at 90–91 (1973); 6 Moore's Federal Practice ¶ 54.42, at 814 (2d ed. 1976). *See also Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 11–12, 100 S.Ct. 1460, 1466–67, 64 L.Ed.2d 1 (1980); *Redding & Co. v. Russwine Construction Corp.*, 417 F.2d 721, 727 (D.C.Cir. 1969).[3] Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross–claim, or third–party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon *an express determination that there is no just reason for delay* and upon *an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than

---

1. Four days later, the district court finally confirmed its earlier decision granting summary judgment on Paddock's third–party claims.

2. A federal court sitting in diversity should allow interest upon a verdict if such interest would be allowed by local law. *See Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941); *Casto v. Arkansas-Louisiana Gas Co.*, 562 F.2d 622 (10th Cir. 1977). *See generally* Note, Interest on Judgments in the Federal Courts, 64 Yale L.J. 1019 (1955). Unfortunately, neither local statutory law nor case law provides any guidance on this point. The District of Columbia statute merely states that "[i]n an action to recover damages for a wrong the judgment for the plaintiff shall bear interest." 15 D.C.Code Ann. § 109 (1973). We believe that a local court would interpret this statute in terms of the applicable procedural rules. Because Federal Rules of Civil Procedure 58 and 54(b) apply without modification to the District of Columbia courts, a local court would therefore turn to federal precedent for guidance in such a situation.

3. The primary purpose of rule 54(b) is to determine finality for purposes of appeal. *See* 10 C. Wright & A. Miller, *supra*, § 2654; 6 Moore's Federal Practice, *supra*, ¶¶ 54.20, 54.27[1]–[2].

all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b) (emphasis added).[4]

Throughout the period for which plaintiffs claim the additional interest, there remained pending third–party claims by Paddock against its insurers for the recovery of its litigation expenses.[5] Thus, this case would appear to involve multiple claims and therefore would appear to be governed by the terms of rule 54(b). The district court, however, did not make an express rule 54(b) determination at the time of the clerk–entered judgment, but instead made such a ruling only when the court later entered judgment after the remittitur. Accordingly, if rule 54(b) does control, the clerk–entered judgment was not final and plaintiffs' claim for the additional interest must therefore fail.[6]

Plaintiffs contend, however, that rule 54(b) does not apply in this case because Paddock's third–party claims were "collateral" to the basic dispute resolved by the clerk–entered judgment. Under the collateral order doctrine, a "collateral" order may be considered final, despite the absence of a rule 54(b) determination, if "it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it," at least if the collateral matter that has been decided by the district court is "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). *See Redding & Co. v. Russwine Construction Corp.*, 417 F.2d 721, 726 n.33 (D.C.Cir. 1969); 10 C. Wright & A. Miller, *supra*, § 2658, at 67–73; 6 Moore's Federal Practice, *supra*, ¶ 54.31. In the present case, plaintiffs urge a "reverse collateral order" theory, maintaining that their clerk–entered judgment should be considered final and outside the scope of rule 54(b) because the remaining third–party claims of Paddock were collateral to this judgment.

■ We believe that the collateral order doctrine, whether applied in the usual or in

---

**4.** Being directed primarily to a determination of finality for purposes of appeal, *see* note 3 *supra*, rule 54(b) gives the district court discretion to certify that its decision on one or more (but not all) of the claims is ready for appeal. *See Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). As a result, the district court can function as a "dispatcher," announcing, if it finds it appropriate to do so, that it will have no further modifications or additions to a partial disposition, and thus that it believes appellate review of the partial disposition can proceed without being disturbed by the district court's resolution of the remainder of the case. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435, 76 S.Ct. 895, 899, 100 L.Ed. 1297 (1956). The requirements of "an express determination that there is not just reason for delay" and "an express direction for the entry of judgment" were added to the rule in 1948 to "provide[ ] an opportunity for litigants to obtain from the District Court a clear statement of what that court is intending with reference to finality, and if such a direction is denied, the litigant can at least protect himself accordingly." *Dickinson*

*v. Petroleum Conversion Corp.*, 338 U.S. 507, 512, 70 S.Ct. 322, 325, 94 L.Ed. 299 (1950).

**5.** Although Paddock's claims for indemnity were rendered moot when the jury determined that Paddock was not liable for any damages, its claims for litigation expenses survived this jury verdict.

**6.** The dissent relies primarily upon *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir. 1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). There the court explicitly distinguished the case before it, involving merely one claim for two types of relief, from cases involving more than one claim for relief, cases which fall "squarely within Rule 54(b), which governs judgment . . . ." *Id.* at 846. Contrary to the dissent's assertion, this court expressly recognized the authority of *Caputo v. U. S. Lines Co.*, 311 F.2d 413 (2d Cir.), *cert. denied sub nom. Imparato Stevedoring Corp. v. United States Lines Co.*, 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963).

a "reverse" fashion,[7] is inapposite in the circumstances of this case. The doctrine applies only to certain remedial and procedural matters that are separable from and not ingredients of any identifiable claims for relief. It does not apply, and therefore rule 54(b) is applicable, when the "collateral" matters themselves constitute claims for relief. As two notable commentators have observed:

> Without question the better view is that *Rule 54(b) applies only when there are multiple claims and the collateral order doctrine applies to the determination of a matter that really is not an ingredient of any identifiable claim.* A "claim" for purposes of the collateral order doctrine, like the request for security for costs in Cohen, is not a "claim for relief" within the meaning of Rule 54(b) inasmuch as the rule refers only to claims in the sense of the substantive right being asserted—the cause of action—rather than requests that are incidental to the procedure for obtaining a judicial award and enforcing it.

10 C. Wright & A. Miller, *supra*, § 2658, at 71 (emphasis added, footnotes omitted). *See* 6 Moore's Federal Practice, *supra*, ¶ 54.31. Paddock's third–party claims plainly are independent claims for relief, claims based on the terms of insurance contracts that it had with its insurers. *See Sargent v. Johnson*, 521 F.2d 1260 (8th Cir. 1975).[8] Thus, the collateral order doctrine does not apply, and the provisions of rule 54(b) control.

Because the district court did not make a rule 54(b) determination, the clerk–entered judgment was not a valid judgment to which interest could attach.[9] Accordingly, Judge Gasch's denial of interest from the time of the clerk–entered judgment is

*Affirmed.*

MIKVA, Circuit Judge, dissenting:

I am compelled to dissent from the decision of my colleagues because the reference points used in the majority opinion are inappropriate. Wholly apart from the question of whether federal law is applicable in this diversity case,[1] the majority's reliance on rule 54(b) to deny post–verdict interest ignores the different purposes served by a rule of finality and a rule that commences the running of interest.

The substantive provision authorizing the allowance of interest in federal courts is section 1961 of the Judicial Code, 28 U.S.C. § 1961 (1976). This section provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court [and] shall be calculated from the date of entry of the judgment, at the rate allowed by State law."

The majority opinion suggests that because "judgment" is not defined in section 1961, they must refer to other sources to determine its meaning. I fail to see why. I believe that the meaning of the word "judgment" in section 1961 is best ascertained by examining the reasons for allowing interest on litigated claims. Interest is the cost of withholding the amount owed the plaintiff once that sum has been determined in a court proceeding. The

---

7. For a case applying the "reverse collateral order" theory, see *Swanson v. American Consumer Indus., Inc.*, 517 F.2d 555, 560–61 (7th Cir. 1975).

8. Plaintiffs rely on *Swanson v. American Consumer Indus., Inc.*, 517 F.2d 555 (7th Cir. 1975). In *Swanson*, the court held the collateral order doctrine applicable to a district court's determination of the attorney's fees to be paid under a "fund" theory in a class action. *See id.* at 560–61. The allegedly "collateral" matters in the present case, on the other hand, are distinct third–party claims for relief, claims relying on the provisions of insurance contracts. We do not believe that the *Swanson* ruling applies

here. *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 n. 5, 100 S.Ct. 745, 750 n. 5, 62 L.Ed.2d 676 (1980); *Richerson v. Jones*, 551 F.2d 918, 921–22 (3d Cir. 1977).

9. Sheraton argues that even if rule 54(b) were inapplicable, the proper date from which to begin computing interest would be the date of the post–remittitur judgment. Having resolved this case on the basis of rule 54(b), we have no occasion to address this argument.

1. In diversity cases, the allowance of interest is a question of state law. *See* note 6, *infra*.

jury's verdict is an assessment of the plaintiff's damages as of the date it is returned and includes interest as damages. If the plaintiff is to be made whole on the date of payment, interest must be allowed during the period between verdict and payment.

In this case, neither the presence of third party claims nor the remittitur changes the fact that the plaintiffs' damages were assessed as of May 27, 1975–the date on which the verdict of the jury was entered as a judgment. The plaintiffs originally sued both Sheraton and Paddock, the company that built the pool. Paddock filed third party complaints against its insurers for litigation expenses and indemnification in the event Paddock was found liable. The jury returned a verdict against Sheraton only and absolved Paddock of any responsibility. It is true that Paddock was still claiming litigation expenses from its insurers–but this is hardly an appropriate reason to deny plaintiffs interest on the amount Sheraton owed the plaintiffs under the terms of a jury verdict duly entered as a judgment under rule 58 of the Federal Rules of Civil Procedure.

It is true that subsequent to the entry of this judgment, the district court ruled that the entire verdict would be overturned unless the plaintiffs agreed to a reduced recovery of $4,680,000. But this ruling merely indicates that, as of May 27, 1975, the sum of $4,680,000 was due and owing to the plaintiffs as the result of a determination in a court proceeding. In reducing the verdict, the trial judge held that a reasonable jury would have returned a verdict of not more than $4,680,000 on May 27, 1975. The plain words of section 1961 mandate that interest be allowed on that sum from that date forward.

Even if guidance must be sought in the Federal Rules of Civil Procedure, I believe

that the majority turns to the wrong rule. Rule 58(1) provides that "upon a general verdict of a jury ... the clerk, unless the court otherwise orders, shall forthwith prepare, sign and enter the judgment without awaiting any direction by the court." The term "judgment" in rule 58 is the same term used in section 1961. There is no reason not to consider section 1961 applicable to a rule 58 judgment. Indeed, the purpose of rule 58(1) was to avoid the delays previously encountered between the time of the jury verdict and the entry of that verdict as a judgment by order of the court. See Kaplan, *Amendments of the Federal Rules of Civil Procedure*, 77 Harv. L.Rev. 801, 831 (1964) ("Rule 58 had always urged speed and, as to the less complicated determinations by court or jury, it told the clerk to prepare and enter judgment himself, without prompting from the judge, unless the judge otherwise directed."). That rule 58 allows the clerk to enter the judgment does not lessen its validity as a judgment. See id.

It is true that rule 54(b), relied on by the majority in reaching the opposite conclusion, states that not all judgments are final for purposes of appeal. But neither case law nor statute suggests that a judgment must be final for purposes of appeal before it can be a judgment for other purposes. Rule 54(b) does not modify, change or limit the meaning of the term judgment. That being so, the fact that rule 58 is subject to the provisions of rule 54(b) operates only to limit the finality of judgments entered under rule 58. Since section 1961 does not limit the allowance of interest to final judgments, I see no reason not to allow interest on all rule 58 judgments.[2]

The Court of Appeals for the Seventh Circuit has allowed interest in a case indistinguishable from the one at bar.[3] In

**2.** This construction is supported by the opinion of the Supreme Court in *Briggs v. Pennsylvania Ry.*, 334 U.S. 303, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948). In *Briggs*, the Supreme Court suggested that section 1961 might even allow interest on a verdict prior to its entry as a judgment under rule 58–but did not need to determine

when interest begins to run in deciding the case before it. *Id.* at 307, 68 S.Ct. at 1040.

**3.** Rather than addressing the logic of the Seventh Circuit's reasoning, the majority chooses to distinguish *Ohio–Sealy* on the basis of that court's distinction of *Caputo v. United States Lines Co.*, 331 F.2d 413 (2d Cir.), *cert. denied,*

*Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (1978), the defendant argued that interest on a verdict as remitted should not be allowed from the date the verdict was entered as a judgment under rule 58. Not only had the original verdict been remitted, other claims between the parties were not resolved until after the remittitur. Indeed, it was not until twenty months after the verdict that there was a final, appealable, judgment. The court analyzed the interplay of rule 58 with section 1961 in exactly the fashion suggested above:

> To begin with, the language of Rule 58, read with § 1961 seems perfectly clear. Judgment is to be entered promptly, and interest runs from the date of entry. [We find no merit in the argument] that . . . absent an order of court pursuant to Rule 54(b), Fed.R.Civ.P., there could be no final judgment on which interest could run. The initial difficulty with this argument is that § 1961 does not in terms require that a judgment be final in the sense of tying up all the issues in a case. Congress knew how to specify finality when it was intended, *see* 28 U.S.C. § 2411, and it did not do so here.

*Id.* at 845–46.

In *Louisiana & Arkansas Ry. Co. v. Pratt*, 142 F.2d 847, 849 (5th Cir. 1944), the Fifth Circuit also indicated that interest should be allowed on rule 58 judgments. In that case, the trial court erroneously set aside the jury verdict. Even though no judgment had ever been entered in the trial court, the reviewing court said that it was within "the equity" of the statute "to award interest from the date of the verdict where, without fault of the plaintiff, an appreciable time has elapsed between the rendition of the verdict and the entry of the judgment." *Id.* at 849 (footnote omitted). The court concluded that interest would be allowed from the time the verdict should have been entered as a judgment under rule 58. *Id.*

The majority opinion cites *Caputo v. United States Lines Co.*, 331 F.2d 413, 416–17 (2d Cir.) *cert. denied*, 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963) to support its holding. Not only is *Caputo* technically distinguishable from this case,[4] the *Caputo* court assumed that rule 54(b) finality would determine the meaning of the term judgment in section 1961 without explanation or any discussion of cases and policies.[5] *See id.* at 416–17. Given the compelling analysis advanced by the Seventh Circuit in *Sealy, Caputo* cannot be regarded as persuasive precedent for this circuit.

A further complication arises from the fact that this case is not purely a matter of federal law. This is a diversity case, and, as I suggested above, the allowance of interest must be determined by local law.[6] It

---

374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963). Although the Seventh Circuit's initial discussion of section 1961 and rules 58 and 54(b) is well thought out, its subsequent attempt to distinguish *Caputo* is not. *See* 585 F.2d at 845–46. Regardless of whether the Seventh Circuit properly distinguished *Caputo*, the logic of the Seventh Circuit's decision supports the allowance of interest in the case at bar–and is more persuasive than the Second Circuit's decision in *Caputo*. *See* text and notes at notes 4–5, *infra*.

4. In *Caputo*, the trial court actually vacated the earlier judgment as prematurely granted. In addition, although the court ignored this point in reaching its decision, the plaintiff had not appealed from either judgment and the question of interest was not properly before the reviewing court. *See* 331 F.2d at 416.

5. Like the court in *Caputo*, and unlike the *Ohio–Sealy* court, the majority gives no reason

for its application of the finality standards of rule 54(b) to the timing of interest under section 1961. A discussion of the reasoning of *Ohio–Sealy* and an explanation of why rule 54(b) is determinative would be more helpful to the resolution of the issue before us than a dismissal of *Ohio–Sealy* based on that court's strained and erroneous attempt to distinguish *Caputo*. *See* note 3, *supra*.

6. As far back as 1891, the Supreme Court held that section 1961

> [w]hile providing only for interest on judgments, does not exclude the idea of a power in the several States to allow interest upon verdicts, and where such allowance is expressly made by a State statute, we consider it a right given to a successful plaintiff, of which he ought not to be deprived by a removal of his case to the Federal court. The

is therefore necessary to consider when interest is allowed on a tort claim under the law of the District of Columbia. This brings us to the same result, but by a different route.

Although D.C. law is not *in haec verba* with section 1961, there is no discernible substantive difference:

> "[I]n an action to recover damages for a wrong the judgment for the plaintiff shall bear interest."

15 D.C.C. § 109 (1973). As with section 1961, the word "judgment" is not defined elsewhere in the section. Section 11–946 of the D.C. Code, however, makes the Federal Rules of Civil Procedure applicable to all local court cases unless modified under a specified procedure. Neither rule 58 nor rule 54(b) has been modified under local law. I think it likely that "judgment" under the local interest statute would be interpreted in terms of the relevant procedural rule–and, in this case, that rule is rule 58 of the Federal Rules of Civil Procedure.

I respectfully suggest that the majority is deciding whether or not there was a "final judgment" for purposes of rule 54(b) of the Federal Rules of Civil Procedure when the question before the court deals with the use of the word "judgment" in two substantive provisions–section 1961 of Title 28 of the United States Code and section 15–109 of the D.C. Code. As Judge Pell pointed out in *Sealy, supra,* "Congress knew how to specify finality when it was intended." 585 F.2d at 546. It is not our job to import that concept into portions of the law in which Congress has not specified it. Since I see no reason why a rule 58 judgment cannot be a "judgment" for purposes of section 1961 of the United States Code or section 15–109 of the D.C. Code without being certified as a "final judgment" for purposes of rule 54(b), I would reverse the trial court on this question.

---

courts of the State and the Federal courts sitting within the State should be in harmony upon this point.

*Massachusetts Benefit Ass'n v. Miles,* 137 U.S. 689, 691, 11 S.Ct. 234, 235, 34 L.Ed. 834 (1891). Although the *Miles* Court referred only to state statutes allowing interest on verdicts, *Miles* was decided prior to *Erie R. R. Co. v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); at that time, only state statutory law was applied by federal courts sitting in diversity. After *Erie,* the Supreme Court quoted *Miles* with approval, stressing that the allowance of interest on verdicts should be the same in federal and state courts in diversity cases. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941). Thus, the Supreme Court has indicated that state law determines whether interest is allowed on a verdict in diversity cases. *See generally* Note, *Interest on Verdicts and Judgments in State and Federal Courts,* 38 N.D.Law. 58, 66 (1962); Note, *Interest on Judgments in the Federal Courts,* 64 Yale L.J. 1019, 1037 (1955) ("Even if section 1961 is construed strictly, it is certain that if the prevailing state law allows interest from verdict to judgment, this state law applies to a federal judgment on a non–federal cause of action"). In the past, courts have applied this principle to allow interest even prior to a verdict. *See, e. g., Joseph E. Bennett Co. v. Trio Industries, Inc.,* 306 F.2d 546, 548–49 (1st Cir. 1962) (question of interest before judgment always a question of state law; here, under state law, interest accumulates from the time the contractual obligation was breached); *New Amsterdam Casualty Co. v. Soileau,* 167 F.2d 767, 772 (5th Cir. 1948) (if a state can allow interest from the date of verdict, it can allow it from the date the complaint is filed).