**JEANNETTE SHEET GLASS CORP., Plaintiff-Appellant,**

v.

**The UNITED STATES, Defendant-Appellee,**

**Crystal International Corp., et al., and Glaverbel, S.A., Defendants-Appellees.**

**Appeal Nos. 85–2455, 86–609.**

United States Court of Appeals, Federal Circuit.

Oct. 23, 1986.

---

James P. Cannon, Jr., Stewart and Stewart, Washington, D.C., argued for appellant. With him on the brief were Eugene L. Stewart, Terrance P. Stewart and Charles A. St. Charles.

Catherine R. Field, Office of the Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued for ITC and Crystal. With her on the brief were Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel. N. David Palmeter, David P. Houlihan, and Alan H. Price, Mudge Rose Guthrie Alexander and Ferdon, Washington, D.C., were on the brief for defendants-appellees Crystal Intern. Corp. and Flachglas A.G.

Morton L. Stone, Ulmer, Berne, Laronge, Glickman and Curtis, Cleveland, Ohio, argued for defendants/appellees. With him on the brief was Ronald H. Isroff.

Before SMITH and BISSELL, Circuit Judges, and SKELTON, Senior Circuit Judge.

## ORDER

SMITH, Circuit Judge.

Appellee Glaverbel S.A. ("Glaverbel") moves to dismiss on the ground that the appeal is from a non-final order. Appellee United States ("Commission") supports the motion and appellant Jeannette Sheet Glass Corp. ("Jeannette") opposes it. We grant the motion and dismiss the appeal.

## BACKGROUND

1. *Proceedings at the ITC and Court of International Trade*

On March 16, 1983, Jeannette filed a petition with the International Trade Commission ("ITC") and the Department of Commerce alleging that imports of thin sheet glass ("TSG") from Switzerland, Belgium, and the Federal Republic of Germany were materially injuring or threatening to injure materially the domestic industry. An antidumping investigation was initiated pursuant to 19 U.S.C. § 1673b(a). Section 1673 prescribes imposing a duty on imports being sold in this country at less than fair value if, by reason of imports of the involved merchandise, (1) an industry in this country is either materially injured or threatened with material injury or (2) the establishment of an industry in this country is materially retarded.

The ITC conducted a preliminary investigation and made two negative preliminary determinations. It concluded that there is no reasonable indication that: (1) the domestic regular quality TSG industry (*viz.*, *Jeannette*) is materially injured or threatened with material injury by reason of imports of regular quality TSG from the three named countries allegedly sold at less than fair value ("LTFV"); and (2) the establishment of a high quality TSG industry in the United States is being materially

retarded by reason of high quality TSG from Belgium or the Federal Republic of Germany allegedly being sold at LTFV. (*Thin Sheet Glass from Switzerland, Belgium and the Federal Republic of Germany,* Inv. Nos. 731–TA–127, 128 and 129 (Preliminary), USITC Pub. No. 1376 (May 1983)).

Jeannette challenged the two negative preliminary determinations at the Court of International Trade. In an order dated March 22, 1985, that court affirmed the ITC's determination of no "material retardation" in high quality TSG, in effect terminating the matter on that issue pending any review by this Court. *Jeannette Sheet Glass Corp. v. United States,* 607 F.Supp. 123 (1985). Regarding material injury in the regular quality TSG industry, the court decided that the "reasonable indication" standard used by the Commission was inconsistent with that used in *Republic Steel Corp. v. United States,* 8 C.I.T. 29, 591 F.Supp. 640 (1984), *reh'g. denied,* 16 Cust. B. & Dec., No. 14 (March 11, 1985). Consequently, it remanded the action for the ITC to reconsider its preliminary "no injury" determination in light of *Republic Steel* and to report to the court within 30 days its findings and redetermination. *Id.,* 607 F.Supp. at 133.

On June 11, 1985, the Court of International Trade denied without opinion the ITC's motion to amend judgment by certifying the "reasonable indication" question for interlocutory appeal under 28 U.S.C. § 1292(b).

On July 12, 1985, the ITC on remand applied the *Republic Steel* standard and reached an affirmative preliminary injury determination. On September 10, 1985, the Court of International Trade issued an or-

der affirming that determination of the ITC.

### 2. *Appeals Here—"Injury" Determination*

Several appeals from the "injury" aspect of the March 22 remand order were filed by intervenors and docketed in this Court as Nos. 85–2554, 85–2555, and 85–2589. Jeannette moved to dismiss those appeals as interlocutory, and the motion was granted by order of June 2, 1986. That order also dismissed as interlocutory, *sua sponte,* Appeal Nos. 86–519 and 86–700. Those were appeals by the Commission and Glaverbel of the September 10 order.

On July 8, 1986, two petitions for rehearing of the June 2 order were denied by this Court without prejudice to the Court of International Trade amending its order to include a statement of certification under 28 U.S.C. § 1292(d)(1) or changing its order if so inclined.

### 3. *Appeals Here—"Material Retardation" Determination*

Jeannette's original appeal in this case (No. 85–2455) was an appeal of the same March 22, 1985 order involved in the dismissed appeals. Whereas those appeals focused on injury in the regular quality TSG industry, Jeannette's appeal focused on "material retardation" in the high quality TSG industry. Jeannette also filed a motion to dismiss or, in the alternative, to stay the appeal because "the order of March 22, 1985, is not final in all respects." Jeannette said that it filed the appeal only to safeguard its right to appeal but believed that its appeal was premature. It argued that Rule 54(b)[1] of the court's rules con-

---

**1.** Rule 54(b) reads as follows:

(b) JUDGMENT UPON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES.

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason or

delay and upon and [sic] express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudi-

templates that a final judgment with respect to less than all the claims before the court will issue only where there is an express determination, which there is not in the March 22 order, that (1) there is no just reason for delay and (2) judgment should be entered. The order would become final, argued Jeannette, when the remand on "material injury" was complete.

Jeannette's motion was successful; the appeal in 85–2455 was stayed by this Court pending resolution by the Court of International Trade of the remaining issues.

After the Court of International Trade issued its order of September 10, 1985, Jeannette, who viewed that order as final, appealed from that portion of the order relating to material retardation. That appeal was filed here as No. 86–609. On Jeannette's motion, the two appeals (Nos. 86–609 and 85–2455) were consolidated and became No. 85–2455 to proceed in accordance with the briefing schedule previously established in No. 86–609. Briefs were filed and oral argument heard.

Glaverbel now moves to dismiss the consolidated appeal, arguing that the case involves separate judgments—one for affirmance (no material retardation) and one for remand (material injury). Under Fed.R. Civ.P. 58, alleges Glaverbel, "every judgment shall be set forth on a separate document," but that was not done here, and hence, there is no jurisdiction to hear the appeal. Glaverbel also argues that, if appeals from the March 22 and September 10 orders of the CIT upon which this appeal is based were already dismissed as interlocutory in other cases, dismissal here is likewise warranted. The Commission supports the motion.

Jeannette opposes the motion, urging that, despite the trial court's failure to certify the "material retardation" issue presented for review, this Court should consider the appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Not irrelevant to the motion is the rejection in *American Lamb Co. v. United States*, 785 F.2d 994 (Fed.Cir.1986) of the "reasonable indication" standard adopted by the Court of International Trade in *Republic Steel* and *Jeannette Sheet Glass*. Based on *American Lamb*, the Commission on August 19, 1986, filed in *Jeannette* a motion for reconsideration of the injury issue, which is still pending before the Court of International Trade.

## ISSUE

■ Whether this Court will decide, without proper certification by the Court of International Trade, an appeal of a claim resolved by a decision of that court when there is another claim that is still being pursued at the agency level.[2]

## OPINION

Two orders are involved here: an order of March 22, 1985 and one of September 10, 1985. Both have two aspects, the first of which is identical in each, *i.e.*, the Court of International Trade affirming the preliminary determination at the ITC of no "material retardation" in the high quality TSG industry. That aspect is "final" in the sense that no further agency action is needed. However, the "material injury" aspect (in the regular quality TSG industry), though different in each order, is not final.

In the March 22 order, the "material injury" aspect involves a specific remand to the ITC for redetermination in light of a standard the Court of International Trade believed correct (but which has since been held incorrect by this Court). That clearly is non-final, as Jeannette and the Commission apparently concede, and as this Court held in its order dated June 2.

The June 2 order also held that the "material injury" aspect of the September 10 order was non-final, based on the authority

cating all the claims and the rights and liabilities of all parties.

**2.** Because that question is answered in the negative, we do not address Glaverbel's Rule 58 argument.

of *Cabot Corp. v. United States,* 788 F.2d 1539 (Fed.Cir.1986). We are in agreement with that holding. In *Cabot,* an order of the Court of International Trade, which remanded the case to the ITC for further findings and redeterminations to be reported to the court within 90 days, was held to be interlocutory in nature. Though the September 10 order affirmed the ITC's preliminary "injury" determination, it was not final under *Cabot* because further proceedings at the agency level were necessary before the case became final. Thus, a final determination of no injury had to be made at the ITC and a preliminary and final determination of LTFV had to be made at the International Trade Administration ("ITA") of the Department of Commerce. *American Lamb Co. v. United States,* 785 F.2d 994, 998–99 (Fed.Cir.1986).

Hence, the issue before us is the same with respect to both the March 22, 1985 and September 10, 1985 orders: whether Jeannette can seek to appeal the final part of an order comprising a final and a non-final part. Those "parts," however, are in essence dispositions of two "claims" within the scope of Rule 54(b) of the United States Court of International Trade Rules, which is identical to Fed.R.Civ.P. 54(b). The non-final "claim" concerns "dumping" regular quality TSG at LTFV and the final claim concerns "dumping" high quality TSG at LTFV. That is a classic situation for Rule 54(b) certification, yet there was none here. Without it, the appeal must be dismissed.[3]

As stated by this Court in *Aleut Tribe v. United States,* 702 F.2d 1015, 1020 (Fed. Cir.1983): "[a]n appeal from the order that disposes of only some claims of an action may *not* be made without waiting for a decision on the remainder of the case, unless the requirements of Rule 54(b) of the Federal Rules of Civil Procedure are met." (Emphasis in original). Thus,

> Rule 54(b) requires two steps before an appeal can be perfected. The trial judge must make (1) 'an express determination that there is no just reason for delay,' and (2) an 'express direction for the entry of judgment.' The 'combination of the direction and determination can be referred to as a "certification" that a particular judgment is ripe for review.' 10 C. Wright & A. Miller, Federal Practice and Procedure § 2660, at 82 (1973).

*Id.*

Under Rule 54(b), the trial judge "is a 'dispatcher' who decides whether to release his decision for appellate consideration by making an express determination that there is no just reason for delay. (Cases omitted.)" *Id.* at 1020–21. The trial judge is permitted "to determine, in the first instance, the appropriate time when each 'final decision' upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal." *Id.* at 1021. As stated in *Samuel v. University of Pittsburgh,* 506 F.2d 355, 361 (3rd Cir. 1974), "the knowledge bred of the district court's proximity to the case can be brought to bear on the question of the propriety of immediate review." *See also Sargent v. Johnson,* 521 F.2d 1260, 1264 (8th Cir.1975) (the appeal here "fails to appreciate the salutory purpose and importance of Rule 54(b).").

Certification is therefore within the discretion of the trial judge who should "carefully consider[ed] the competing equities." *Chaparral Communications, Inc. v. Boman Industries, Inc.,* 798 F.2d 456, 459, 230 USPQ 535, 537 (Fed.Cir.1986) ("the need for an immediate appeal was clearly outweighed by the policy against piecemeal

---

**3.** Nor was there certification under 28 U.S.C. § 1292(d)(1), which states:

(d)(1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after entry of such order.

adjudication."). Though "there *may* be exceptional cases where an appellate court is justified in mandamusing the district court to execute the certificate, ... as a general proposition a refusal to execute ... will not be interfered with by an appellate court." 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.41[3] at 751 (hereafter "Moore's Federal Practice") (emphasis added.) *Cf. Makuc v. American Honda Motor Co.*, 692 F.2d 172, 173 (1st Cir.1982) ("we are unaware of any cases in which a court of appeals has reviewed the denial of a Rule 54(b) motion ... [or] ... where mandamus powers have been applied to require the granting of a Rule 54(b) motion.").

■ Jeannette would have us ignore Rule 54(b) and decide the appeal under the collateral order exception to the "final order" rule. To fall within the exception, a collateral order must at a minimum: (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment. *Cabot Corp. v. United States*, 788 F.2d 1539, 1543 (Fed.Cir.1986). However, given the strong policies underlying Rule 54(b), and finality in general, we will not engraft in this case the collateral order exception onto the Rule 54(b) requirement.

The "final order" rule reflects a "strong congressional policy against piecemeal reviews and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1020, 228 USPQ 926, 928 (Fed.Cir.1986) (quoting *United States v. Nixon*, 418 U.S. 683, 690, 94 S.Ct. 3090, 3098–99, 41 L.Ed.2d 1039 (1974)). The Supreme Court in recent decisions has indicated that departure from the rule will be allowed "only for the *limited* category of cases falling within the 'collateral order' exception delineated in *Cohen v. Beneficial Industries Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." *Cabot Corp. v. United States*,

788 F.2d 1539, 1543 (Fed.Cir.1986) (emphasis added.) That exception is a "narrow" one whose reach is limited to trial court orders affecting rights that will be "irretrievably lost" in the absence of an immediate appeal. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985).

Adopting Jeannette's argument would improperly extend the narrow *Cohen* exception to orders that are not merely "collateral" to the main action, but are the very claims themselves. We will not do that here. Instead, we approve of the rationale expressed in *Hooks v. Washington Sheraton Corp.*, 642 F.2d 614 (D.C.Cir.1980). There, plaintiff contended that the Rule 54(b) need for certification was inapplicable because certain third party claims were "collateral" to the basic dispute resolved by the judgment entered by the clerk. Plaintiffs urged what the court characterized as a "reverse collateral order" theory, maintaining that the clerk entered judgment should be considered final and outside the scope of Rule 54(b) because the remaining claims were collateral thereto. The Court rejected that argument. It reasoned that the collateral order doctrine applies only to "certain remedial and procedural matters that are separable from and not ingredients of any identifiable claims for relief" and it does not apply when the collateral matters "themselves constitute the claims for relief." 642 F.2d at 618. Citing "two notable commentators" (10 C. Wright & A. Miller and 6 Moore's Federal Practice), the Court stated:

> Without question the better view is that *Rule 54(b) applies only when there are multiple claims and the collateral order doctrine applies to the determination of a matter that really is not an ingredient of any identifiable claim.* A 'claim' for purposes of the collateral order doctrine, like the request for security for costs in Cohen, is not a 'claim for relief' within the meaning of Rule 54(b) inasmuch as the rule refers only to

claims in the sense of the substantive right being asserted—the cause of action—rather than requests that are incidental to the procedure for obtaining a judicial award and enforcing it.

*Id.* at 618. (Emphasis in original.) *See also United States Bonding Ins. Co. v. Stein,* 410 F.2d 483, 486 n. 3 (3rd Cir.1969) (appellant appealed without Rule 54(b) certification the grant of summary judgment on one of multiple claims; the court rejected an argument based on *Cohen,* reasoning that "the object of the summary judgment was one of the claims for relief sought in the action and was most certainly one of the ingredients of the substantive claim."). *See generally* 6 Moore's Federal Practice, ¶ 54.31 at 473–75.

By-passing Rule 54(b) under the guise of *Cohen* would be especially troublesome in this case. Jeannette argues that the material retardation aspect of the order, relating to the high quality TSG industry, "addressed specific facts and specific legal issues ... that had nothing to do with the facts and legal issues regarding material *injury* of the *regular quality* TSG industry" (emphasis in original). Yet, when Jeannette earlier moved to dismiss or stay the original appeal in No. 85–2455, it argued that "[m]any of the facts involved in this litigation, particularly those facts concerning the manufacturing process and the steps necessary to produce 'high quality' versus 'regular quality' thin sheet glass, are pertinent to both the issue of material injury and the issue of material retardation." We should not have to sort those arguments as part of a *Cohen* analysis. Rule 54(b) properly requires the trial judge to sort them out and allow appeal of one of the claims if he or she deems it appropriate.

The trial judge should also be the one to test Jeannette's argument that it will be harmed by an inability to obtain immediate review. By the time later review occurs, argues Jeannette, it may already be in the high quality TSG market, making the relevant inquiry "material injury," not material retardation. Or, Jeannette argues, the "material retardation" may have been so successful by the time final appeal arrives that Jeannette is no longer in the position of being able to enter the high quality TSG industry. No one can better assess those speculative arguments than the trial judge who sat through a trial involving those industries. Rule 54(b) allows him or her to do that.

Also relevant to our decision is that the trial judge has before him the Commission's motion to reconsider, in light of this Court's decision in *American Lamb,* the "injury" aspect of the case and to affirm the ITC's earlier holding of no preliminary injury. Resolution of that motion in the Commission's favor could speed up greatly the material injury aspect of this case, leading to that aspect and "material retardation" being before us in the near future.

Jeannette argues that *Maier v. Orr,* 754 F.2d 973, *reh'g. denied,* 758 F.2d 1578 (Fed. Cir.1985) supports its position. *Maier* involved a district court order commanding the Secretary of the Air Force to reinstate Maier on active duty with back pay, retroactive promotions, longevity credit, and other entitlements which she would have received had she not been improperly discharged. This Court rejected Maier's argument that the order was not final and thus not appealable. It held that the order was sufficiently injunctive in nature to justify this Court taking jurisdiction under § 1292(a)(1).[4] The order in this case, how-

**4.** 28 U.S.C. § 1292(a)(1) states:

§ 1292. Interlocutory decisions

 (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

 (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

ever, is not of the injunctive type—hence, *Maier* is distinguishable.

The *Maier* court in dicta added: "Moreover, the order is so fundamental to the litigation that both policy and common sense would dictate that [the Court should] assume jurisdiction under the rule of *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148 [85 S.Ct. 308, 13 L.Ed.2d 199]." *Gillespie* illustrates an exception to finality that has on occasion been used by this Court, *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 736 F.2d 1508, 222 USPQ 276 (Fed.Cir.1984), and its predecessor, *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501, 175 USPQ 417 (CCPA 1972). It focuses on whether the order in question is distinct from the remaining allegations and on whether judicial economy will be served. *Gillespie*, however, is to be very rarely used. As stated in *Cabot*, 788 F.2d at 1544, "there is no warrant here for applying the *Gillespie* rationale beyond the unique facts of that case." *Accord Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 ("If *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance."). As in *Cabot*, there is no warrant here to apply *Gillespie*.

In dismissing this appeal, we are not unaware of this Court's recent decisions in *Dewey Electronics Corp. v. United States*, 803 F.2d 650 (1986) and *Teller Environmental Systems, Inc. v. United States*, 802 F.2d 1385 (1986). Dewey appealed from an order of the Armed Services Board of Contract Appeals (Board) finding the government not liable on four claims of equitable adjustment, pricing of certain items, and interest, but liable on five other claims. The Board remanded the five claims to the contracting officer to determine quantum. The government argued that the order was non-final because of the remanded claims. This Court decided that the Board made a final decision on the four claims that were the subject of the appeal and that the appeal should not be deferred pending resolution of quantum on the other five claims.

In *Dewey* it was determined that the statute granted the Board jurisdiction to review decisions of contracting officers and that, because only liability on the claims had been decided (constructively) by the contracting officer, the "Board decided all of the issues before it." *Dewey* also noted that the legislative history of the Contract Disputes Act and "longstanding practice of agency boards ... counsel against applying a rigid district court concept of finality." The court concluded that the appeal was appropriate even though some of the claims were being returned to the agency for quantum determination. In *Teller*, however, the court held that where liability and quantum on a claim were both before the Board, an appeal of the Board's liability decision was premature because of the Board's remand to the contracting officer for quantum determination.

The decisions in *Dewey* and *Teller* are unique to the contract area and are not applicable here. We are constrained by *Cabot*, which broadly states "that an order remanding a matter to an administrative agency for further findings and proceedings is not final." 788 F.2d at 1542. We will not deviate from it in the context of an appeal from the Court of International Trade of an order remanding back to the ITA or ITC—whether the remand is of the precise issue decided by the trial court (as in *Cabot*) or whether the remand is of one of two issues, the other being final (as here). Moreover, just as the *Cabot* court was swayed by the possibility of certification under 28 U.S.C. § 1292(d)(1), we are swayed by the availability in this multiple claims situation of certification under Rule 54(b).

Accordingly,

IT IS ORDERED THAT:

Glaverbel's motion to dismiss is granted and this appeal is dismissed, without prejudice to the Court of International Trade to certify the case. Just as in *Aleut Tribe v. United States*, 702 F.2d 1015, 1021 (Fed. Cir.1983):

If the requisite certification is obtained, the parties may, of course, proceed upon the same briefs, record, and arguments presented in this dismissed appeal, and these may be supplemented if necessary by papers describing any further proceedings in the ... Court [of International Trade]. See 10 C. Wright & A. Miller, *supra* § 2660, at 89 & n. 87 (1973 & Supp.1981). We express no opinion as to whether a Rule 54(b) certification should be made, as this is a matter that is within the discretion of the trial judge.