**COPELANDS' ENTERPRISES, INC. d/b/a Copelands' Sports, Appellant,**

v.

**CNV, INC., Appellee.**

**Nos. 89–1053, 89–1079.**

United States Court of Appeals, Federal Circuit.

Oct. 13, 1989.

---

10. 35 U.S.C. § 285 reads: The court in exceptional cases may award reasonable attorney fees

to the prevailing party.

Douglas E. Olson, Lyon & Lyon, Los Angeles, Cal., argued, for appellant. With him on the brief, was Dale Nelson. Also on the brief, was Daniel J. Meaney, Jr., Santa Barbara, Cal., of counsel.

G. Hamilton Loeb, Paul, Hastings, Janofsky & Walker, Washington, D.C., argued, for appellee. With him on the brief, were Karen E. Silverman and Allen S. Resnick.

Albin F. Drost and Fred McKelvey, Office of the Sol., of Arlington, Va., were on the brief, for amicus curiae.

Before MARKEY, Chief Judge, FRIEDMAN, RICH, NIES, NEWMAN, BISSELL, ARCHER, MAYER and MICHEL, Circuit Judges.

## ORDER

ARCHER, Circuit Judge.

This consolidated appeal arises from the August 1988 orders of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB or Board) in Cancellation No. 16,128 and Opposition No. 75,373. In each proceeding, the Board granted partial summary judgment dismissing an allegation of trademark registration symbol misuse, but denied summary judgment and scheduled trial on other issues, which, if decided against CNV, Inc., would preclude registration of its trademarks.

### I

The VUARNET trademark, U.S. Registration No. 1,276,815, for eyeglasses, sunglasses and other related goods was registered on the principal register on May 8, 1984 by Sporoptic Pouilloux, S.A. (Pouilloux), a French corporation and the manufacturer of VUARNET sunglasses. CNV, a domestic corporation and distributor of Pouilloux, is the current registrant, by assignment recorded on January 18, 1985, of the VUARNET registration.

CNV has applied for registration of a mark consisting of the words VUARNET FRANCE and an associated V-shaped design for the same types of optical goods. The pending mark was published for opposition by the PTO on November 4, 1986.

On December 31, 1986, Copelands' Enterprises (Copelands) filed a petition with the Commissioner of Patents and Trademarks for cancellation of the VUARNET registration and a notice of opposition to the registration of VUARNET FRANCE. *See* 15 U.S.C. §§ 1063–1064 (1988).

In its pleadings, Copelands challenged the federal registration of both marks on the grounds that (1) CNV had misused the trademark registration symbol in connection with the two marks, (2) had not filed the written consent of Jean Vuarnet to register marks comprising his name, and (3) the dealings of Pouilloux and CNV gave rise to false assertions of ownership, first by Pouilloux with respect to the registered VUARNET mark and then by CNV in connection with the VUARNET FRANCE mark. In addition, incorporated into Copelands' pleadings is a letter from CNV's counsel charging Copelands with infringement, apparently for not purchasing the

goods it sells under the VUARNET mark from CNV. CNV denied each of these allegations and moved for summary judgment in both proceedings.

The TTAB denied summary judgment on the ownership and consent issues, finding that material facts remained genuinely in dispute. However, the Board granted partial summary judgment favoring CNV on the misuse issue. Trial dates were set for the disputed issues. If either were to be decided in Copelands' favor, federal registration of CNV's marks would be precluded. Copelands, however, noticed appeals in this court from the Board's grant of summary judgment in both proceedings on the misuse issue.

By motion here, CNV has challenged the appeals on jurisdictional grounds, i.e., that the grants of partial summary judgment in the proceedings below were nonfinal, interlocutory and nonappealable. Because of the importance of the question raised by CNV's motion and the unsettled nature of our jurisprudence on the point, we have taken Copelands' appeals *in banc*. As requested by this court, the Commissioner of Patents and Trademarks has filed a brief *amicus curiae* on the jurisdictional issue.

## II

### *Issue*

May the grant of partial summary judgment by the TTAB, which does not result in a disposition of the proceeding before it, be appealed to this court under 28 U.S.C. § 1295(a)(4)(B) (1982) and 15 U.S.C. § 1071 (1988)?

## III

■ "Courts created by statute can have no jurisdiction but such as the statute confers." *Christianson v. Colt Indus.*, 486 U.S. 800, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (quoting *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850)). This court was both created and vested with jurisdiction by the Federal Courts Im-

provement Act of 1982. As pertinent here, this court was granted exclusive jurisdiction over "an appeal from a decision of . . . the Trademark Trial and Appeal Board." 28 U.S.C. § 1295(a)(4)(B) (1982). In this regard, we, in essence, inherited the jurisdiction of the United States Court of Customs and Patent Appeals (CCPA), which was abolished with our creation. Indeed, section 1295(a)(4)(B) uses the same operative language as 28 U.S.C. § 1542 (repealed 1982) regarding our predecessor.

While section 1295(a)(4) does not expressly premise appellate review on the finality of the Board's decision, *cf.* 28 U.S.C. §§ 1295(a)(1), (2), (3), (5), (6), (9), and (10) (1982), the CCPA, when faced with the issue, regularly held that finality was required to appeal. *See, e.g., Champion Prods., Inc. v. Ohio State Univ.*, 614 F.2d 763, 765, 204 USPQ 833, 834 (CCPA 1980) ("As a general rule, 'decision' means a final dispositive ruling that ends litigation on the merits."); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 609 F.2d 1002, 1005, 204 USPQ 195, 197 (CCPA 1979) ("This court has repeatedly stated that the word 'decision' in the statute is to be read 'final decision.' "); *Aerco Int'l, Inc. v. Vapor Corp.*, 608 F.2d 518, 520, 203 USPQ 882, 884 (CCPA 1979); *Stabilisierungsfonds Fur Wein v. Zimmermann–Graeff KG*, 198 USPQ 154, 155 (CCPA 1978).[1]

While the CCPA's adoption of the finality rule in this context seems to have been bottomed on prudential considerations, it nevertheless finds strong support both in the tradition of the federal courts system, *see generally* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 54.04[2] (2d ed. 1988), and in sound public policy. As indicated by the Supreme Court, requiring a party to await a final decision and to raise all claims of error in a single appeal "emphasizes the deference that appellate courts owe to the trial judge," "avoid[s] the obstruction to just claims that would come from permitting the harassment and cost of a succession of

---

1. While the CCPA focused on 15 U.S.C. § 1071 rather than 28 U.S.C. § 1542, both statutes concern an appeal from a "decision" of the TTAB.

separate appeals," and "promot[es] efficient judicial administration." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

■ For these reasons, we reaffirm the CCPA's adopted rule.

Interpreting section 1295(a)(4) as if it had incorporated an express finality requirement, however, does not fully answer the question raised by CNV's motion. There have been instances in which the CCPA, as well as this court, has allowed an appeal from a decision that did not meet the traditional test of finality. *See, e.g., Toro Co. v. Hardigg Indus., Inc.,* 549 F.2d 785, 193 USPQ 149 (CCPA 1977); *Knickerbocker Toy Co. v. Faultless Starch Co.,* 467 F.2d 501, 175 USPQ 417 (CCPA 1972); *Tenneco Resins, Inc. v. Reeves Brothers, Inc.,* 736 F.2d 1508, 222 USPQ 276 (Fed.Cir.1984) (single judge order denying motion to dismiss). *Toro* and *Knickerbocker* involved appeals from the TTAB.

In each of these cases the court's exercise of jurisdiction can be traced to and is premised on the Supreme Court's holding in *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). *See Toro,* 549 F.2d at 788, 193 USPQ at 153; *Knickerbocker,* 467 F.2d at 507, 175 USPQ at 421; *Tenneco,* 736 F.2d at 1509–10, 222 USPQ at 277. In *Gillespie,* the Supreme Court allowed immediate appellate review under the finality requirement of 28 U.S.C. § 1291 (1982) where the effect of the lower court's interlocutory order was "fundamental to the further conduct of the case." *Gillespie,* 379 U.S. at 154, 85 S.Ct. at 312. The Court indicated that "in deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Id.* at 152–53, 85 S.Ct. at 311 (quoting *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950)).

We find it unnecessary to review the specifics of these progeny of *Gillespie,* however, because the Supreme Court has severely limited *Gillespie* as a basis for accepting an appeal from an interlocutory decision. In *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), *Gillespie* was limited to its "unique facts" lest, in the Supreme Court's view, 28 U.S.C. § 1291 (1982) "be stripped of all significance." 437 U.S. at 477 n. 30, 98 S.Ct. at 2462 n. 30. This court has recognized that admonition. *See Fairchild Republic Co. v. United States,* 810 F.2d 1123, 1126 (Fed.Cir.1987); *Jeannette Sheet Glass Corp. v. United States,* 803 F.2d 1576, 1583 (Fed.Cir.1986); *but cf. Tenneco Resins, Inc. v. Reeves Brothers, Inc.,* 736 F.2d at 1510–12, 222 USPQ at 278–79.

*Gillespie* was a wrongful death suit involving the Jones Act, 46 U.S.C. § 688 (1982), the Ohio wrongful death statute, and unseaworthiness under "general maritime law." 379 U.S. at 149–52, 85 S.Ct. at 309–11. Similar facts could not possibly arise before the TTAB. Accordingly, *Gillespie* no longer provides a viable basis upon which this court may entertain appeals from interlocutory decisions or orders of that tribunal.

The jurisdictional arguments presented to us by the parties, as well as the *amicus,* presume that *Gillespie* is alive and well in the context of appeals from the TTAB. Consequently, their arguments on the issue are focused solely on whether or not we should, as a matter of our discretion, accept Copelands' appeal. Our holding today renders consideration of these arguments unnecessary.

The orders from which Copelands appeals decided only one of the issues presented to the Board and did not result in a disposition of the case; other issues are yet to be tried and decided by the Board. Since the appealed orders did not put an end to the litigation before the Board, Copelands' appeals are premature. Copelands must await and raise all claims of error in a single appeal. *See Lauro Lines S.R.I. v. Chasser,* —— U.S. ——, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989); *Firestone,* 449 U.S. at 373–74, 101 S.Ct. at 672–73.

Accordingly, IT IS ORDERED that these appeals be dismissed.

PAULINE NEWMAN, Circuit Judge, concurring.

I agree with this court's holding that, on the facts of this case, no sufficient basis for interlocutory appeal has been shown. I reach this conclusion applying the standards that we and the Court of Customs and Patent Appeals have traditionally exercised with respect to appeals from the Patent and Trademark Office. *See, e.g., Champion Products, Inc. v. Ohio State Univ.,* 614 F.2d 763, 765, 204 USPQ 833, 834 (CCPA 1980); *Toro Co. v. Hardigg Industries, Inc.,* 549 F.2d 785, 193 USPQ 149 (CCPA 1977); *SCOA Industries, Inc. v. Kennedy & Cohen, Inc.,* 530 F.2d 953, 955, 189 USPQ 15, 17 (CCPA 1976); *Knickerbocker Toy Co. v. Faultless Starch Co.,* 467 F.2d 501, 175 USPQ 417 (CCPA 1972). Without more, this resolves the matter before us. On that basis I concur in the court's judgment.

However, I do not concur in the court's *in banc* ruling that rewrites the text of our jurisdictional statute; and does so unnecessarily. For appeals arising in the Patent and Trademark Office, as for appeals directly from the Secretary of Commerce and under the Plant Variety Protection Act, our jurisdictional statute authorizes greater flexibility than for other sources of our appeals: (emphases added)

**28 U.S.C. § 1295(a).** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from a *final* decision of a district court [based] on section 1338 ...

(2) of an appeal from a *final* decision of a district court [based] on section 1346 ...

(3) of an appeal from a *final* decision of the United States Claims Court.

(4) of an appeal from a decision of—
(A) the Board of Patent Appeals and Interferences ...
(B) the Commissioner of Patents and Trademarks or the Trademark Trial and Appeal Board ...

(C) a district court [under] section 145 or 146 of title 35;

(5) of an appeal from a *final* decision of the United States Court of International Trade;

(6) to review the *final* determinations of the United States International Trade Commission ...

(7) to review, by appeal on questions of law only, findings of the Secretary of Commerce ...

(8) of an appeal under section 71 of the Plant Variety Protection Act ...

(9) of an appeal from a *final* order or *final* decision of the Merit Systems Protection Board ...

(10) of an appeal from a *final* decision of an agency board of contract appeals ...

The pattern of these clauses shows that the omission of the word "final" in paragraph (4) was not accidental. I know no reason for us to abdicate, in advance and for all circumstances, the flexibility thereby granted. The court's holding today, and its implicit criticism of the rare CCPA cases that accepted interlocutory appeals, *viz. Toro Co.* and *Knickerbocker Toy,* adds a rigor that was expressly omitted by Congress. We must assume that the statutory language was designed to allow this court to accommodate any special considerations specific to these sources of appeals.

This does not mean that § 1295(a)(4) can be read as requiring us indiscriminately to accept all interlocutory appeals. As the Commissioner points out in his brief *amicus curiae,* the CCPA had accepted such appeals on the rarest occasions. Nor is the question whether "the *Gillespie* dictum" is applicable to PTO appeals, not because *Gillespie* has been limited to its facts, *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (1978), but because § 1295(a)(4) allows us to establish standards that are specifically adapted to appeals from the PTO.

Even on the position now taken by this court, the criticism of *Toro* and *Knickerbocker Toy* is unwarranted. Although these cases applied the *Gillespie* standard,

both cases having been decided before *Coopers & Lybrand,* we don't know whether there might have been other grounds for acceptance of these appeals. A sister court has observed that "[n]o federal appellate court, to our knowledge, has ever followed the *Gillespie* dictum in a case in which the appeal could not be justified on the basis of some other, narrower, policy demanding deviation from the finality rule". *Green v. Dept. of Commerce,* 618 F.2d 836, 841 (D.C.Cir.1980). Such traditional grounds include interlocutory appeals under 28 U.S.C. § 1292(a)(1) of orders that grant or deny injunctions or have the effect of granting or denying injunctions, *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981), or appeals under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See generally Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988).

In sum, 28 U.S.C. § 1295(a)(4) authorizes a greater appellate flexibility as to decisions from the Patent and Trademark Office, whether from the Commissioner, the PTO tribunals, or the district courts under 35 U.S.C. §§ 145 and 146. In optimum exercise of our responsibility with respect to the Patent and Trademark Office, I would not reject this statutory authority.