MARVIN, Judge.
In this tort action against the hospital that contracted with the employer of plaintiff Foster to replace a large compressor in the hospital’s air conditioning system, Foster, his wife, and his employer’s w.c. insurer appeal a judgment rejecting their respective demands for damages that arose out of a disabling back injury Foster sustained while completing the work.[1]
In this instance, the issue of fault under C.C. Arts. 2315 and 2317 is factual. We find no clear error in the trial court’s conclusion that the hospital did not cause Foster’s injury and affirm the judgment.
FACTS
Foster injured his back while he and a co-employee were dismantling a metal A-frame gantry they had assembled to support a hoist used to install the replacement *1204 compressor and put it into operation. After the leg supports were removed from one end of the gantry, Poster saw that the back of the electrical panel which controlled the operation of the system was uncovered. Fearing electrical shock or electrocution, he sent his co-employee to seek assistance from hospital employees while he alone supported with his shoulder for about 10 minutes one end of the horizontal I-beam of the gantry from which the legs had been removed. The I-beam weighed less than 100 lbs. Poster immediately experienced back pain when three hospital employees and Foster’s co-employee removed the beam from his shoulder. About three months later he underwent surgery for the removal of two defective lumbar intervertebral discs.
The compressor was centered between legs of the A-frame gantry which supported the overhead I-beam. The electrical control box, which was above and to the left of the compressor, is shown with its back cover removed in this photograph:
[[Image here]]
*1205 In or on the front face of the control box are gauges, switches, and timers. The front face of the box is covered by a hinged door. The back of the control box, shown in the photograph, contains insulated wiring through which electrical power is conducted, contactors, and switching mechanisms. Heavy plastic houses and further insulates the control mechanisms which are behind the front face of the control box. Before the replacement compressor was installed, the back cover of the control box, which is held in place by several screws, was.removed by hospital employees to allow a portable fan to cool the overload switches in the box. The defective compressor was' causing the overload switches to overheat and shut down the system. The fan was necessary to keep the system operating before the replacement compressor arrived.
Foster contends that his son, who was his co-worker, placed the cover on the back of the electrical control box several days before his injury on May 16, 1985, and that the hospital employees negligently removed the cover on or before May 16. He also contends the hospital is liable under C.C. Art. 2317 as the custodian of the uncovered box — allegedly a defective thing that posed an unreasonable risk of harm to him.
Foster and his son testified the back cover was installed on the box several days before May 16. They said the sole purpose of their May 16 return to the mechanical room was to dismantle and remove the A-frame. The hospital employees who were responsible for maintenance and operation of the air conditioning system testified that they did not, during the time Foster and his co-worker were doing the contract work (May 3-May 16, 1985), remove the cover.
These findings by the trial court are supported by the record:
The only reason that the Richland Parish Hospital employees had previously removed the panel was to provide additional cooling for a defective compressor. A new compressor had been installed, and the only purpose for which the plaintiff had returned was to disassemble his A-frame assembly and to perform general cleanup work. The hospital employees testified that they had not removed the cover, and it appears that there would be no reason whatsoever for them to remove the cover, as the compressor was working, and there was no need to use a fan on the panel as previously had been done. It appears much more likely to this Court that the replacement of the control panel [cover] was something which the Fosters intended to do when leaving on their trip prior to May 16th, but inadvertently did not do. The plaintiff always carries the burden of proof and he must prove to the Court by a preponderance of the evidence that the hospital was at fault in removing the control panel [cover]. It is this Court’s opinion that Mr. Foster has not carried that burden of proof.
The evidence indicated that the “I” beam was made of cast aluminum and was estimated to weigh less than one hundred pounds. It must be remember that only a partial weight of the “I” beam was upon Mr. Foster’s shoulder, with the remaining weight being upon the leg assembly on the opposite end. The evidence indicated that on prior occasions Elbert and James Foster had requested help of hospital employees and they had helped in disassembling the material. If help was needed in the past to disassemble this same A-frame, then certainly Mr. Foster should have known that he would need the same help on this occasion. This Court believes that Mr. Foster was negligent in attempting to dismantle the A-frame without first securing sufficient help.
The Court also had occasion to view the photographs and hear the testimony of various witnesses as to the location of the “I” beam, leg assembly, etc. Taking into consideration the weight of the “I” beam, and the location of the various equipment, it would have been feasible for the plaintiff to simply have lowered the “I” beam and allowed it to rest on the compressor motor. The photographs indicated this would be done without *1206 coming near the electrical panel. Once help arrived, then the “I” beam could have been removed.
Mr. Foster testified that he has worked around electricity all of his adult life in servicing and repairing air conditioners, and that he has a very healthy respect for it. However his healthy respect or fear certainly is not consistent with his disassembling half of this A-frame prior to the time that he even notices that the electrical control panel covering is missing. It seems much more reasonable that he should have instructed his son to supply the missing cover, or to immediately flip the [compressor power] switch rather than to stand and hold the “I” beam for an extended period of time.
The Court does not believe that the plaintiff has met his burden of proof in showing that the hospital was responsible for the missing electrical control panel cover, and furthermore the Court believes that even if the hospital was responsible for the removal of the control panel cover, there is not sufficient evidence to show a connection between the missing control panel [cover] and the injury to Mr. Foster. The Court does not believe that Mr. Foster acted as a “reasonably prudent person" as is required by law.
The trial court did not expressly mention Foster’s contention that the hospital was negligent because it allegedly violated several sections of the National Electrical Safety Code. Foster filed 1984 and 1987 editions of the Code in evidence, but offered no expert testimony and scant lay testimony to prove the violations that he alleged at trial and argues on appeal. The absence of expert testimony does not make the NESC inadmissible. Burley v. Louisiana Power & Light Co., 319 So.2d 334 (La.1975). The NESC is to be given “such probative weight as it warrants in the [trier of fact’s] judgment.” Burley, at p. 338.
The trial court assigned no appreciable weight to the NESC. Even if we assume Foster proved violations, he has not proved the causal connection between a violation and his injury. See and compare
Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). We discuss liability under the fault articles of the Civil Code.
FAULT
Whether the fault alleged against the owner is based on C.C. Art. 2315 negligence or C.C. Art. 2317 “strict liability,” the claimant must prove that the thing presented an unreasonable risk of harm and was a substantial cause in fact of the harm he sustained. Even then, the claimant’s relevant conduct may affect his or her recovery in some circumstances where victim fault or negligence may be legally considered. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). See also Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988), and comparative factors in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985).
Faced with conflicting testimony, the trial court found that the back cover of the electrical control box was not removed by any employee of the hospital but was “more likely” not replaced by Foster or his son. This is a finding that the trial court did not believe the testimony of Foster and his co-employee that the co-employee installed the back cover on the box a few days before May 16, a finding based on an assessment of credibility which we do not disturb on appeal. Caldwell v. Texas Industries, Inc., 441 So.2d 472 (La.App. 2d Cir.1983). We cannot find the trial court clearly wrong in this respect.
Before final completion of his employer’s undertaking with the hospital, Foster, and not the hospital employees, controlled or had authority over the mechanical and electrical components of the air conditioning system.
For his employer, Foster had worked in the hospital mechanical room about, once a month for five years. He had either or both removed and replaced the back cover of the electrical box on several occasions, except when he found a fan was being used to cool the overload switches. He was *1207 aware when the compressor was operating. He knew how to turn on and off the electrical power that operated the system. He and his co-worker had worked 20-30 minutes to partially dismantle the A-frame within a foot or so of the back of the control box before he saw the back cover was not on the box.
On other occasions when he had replaced the cover on the box, Foster found it in the mechanical room. He was an experienced air conditioning repairer. He did not instruct his co-worker either to look for the cover and put it on the box or to turn off the electrical power, but sent him out of the mechanical room to get hospital employees to assist in dismantling and removing the A-frame which he had erected to aid his work.
In 1983 Foster had a lumbar disc dissolved by a chemical enzyme administered by an orthopedic surgeon to relieve pain and pressure on Foster’s sciatic nerve. Foster’s helper testified that Foster complained of back pain while working in the mechanical room several days before the May 16 incident. Foster knew or should have known of his physical predisposition to aggravation or injury of his back.
The trial court noted that the I-beam could have been lowered and rested on the compressor motor, either by Foster alone or with the help of his co-employee, while the missing back cover was located and put in place. Notwithstanding his experience, physically and vocationally, and his option of other choices that were known to him and were much less risky, Foster made a conscious and deliberate choice to support the metal I-beam on his shoulder during the “extended time” he waited for his co-employee to return with others to help him dismantle the A-frame.
We agree that the open back of the electrical control box simply was not a substantial cause in fact of Foster’s back injury under the recited circumstances.
Foster, and not the hospital, caused his injury. His conduct [whether it be either or both his undertaking the work without first noticing the uncovered box or his supporting the A-frame by himself for the “extended time”] was not mere inadvertent conduct. The risk of aggravation or injury to his back was created by his choosing from among several known alternative choices, each of which was less risky than the choice he made. His capacity to minimize the risk was great because he had the authority to control the air conditioning equipment in the mechanical room. There were no extenuating circumstances that required him to proceed in haste or deprived him of time to make either a more reasonable observation of the work area or a more reasonable choice to minimize the risk once he discovered it. Foster simply failed to exercise reasonable care for his own safety. Smolinski v. Taulli, 276 So.2d 286 (La.1973).
DECREE
We find no clear error in the trial court’s conclusions. Hughes v. Queries & Nelson, Inc., 460 So.2d 1161 (La.App. 2d Cir.1984), writ denied; Kent v. Gulf States Utilities Co., supra. See also Stewart v. Sam Wallace Indus. Co., 409 So.2d 335 (La.App. 1st Cir.1981), writ denied, and Stine v. Creel, 417 So.2d 1243 (La.App. 1st Cir.1982), writ denied.
At the cost of appellants, the judgment is AFFIRMED.

. Foster demanded personal injury damages. His wife sought damages for loss of consortium, and the insurer, the amounts paid to or for Foster under the worker’s compensation law.