KEMP and others, Appellants, v. WISCONSIN ELECTRIC POWER COMPANY, Respondent.*

*No. 133. Argued October 1, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 161.)

* Motion for rehearing denied, with costs, on March 3, 1970.

For the appellants there were briefs by *John K. Brendel,* attorney, and *Thomas R. Fahl* of counsel, both of Wauwatosa, and oral argument by *Mr. Brendel.*

For the respondent there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane* of Milwaukee, and oral argument by *Jack R. Wiedabach.*

HEFFERNAN, J. This is an action for damages resulting from injuries arising out of electrical burns suffered by the minor plaintiff-appellant, Daniel Kemp, on July 24, 1962. Robert Kemp, the father of Daniel, joined in bringing a separate action for damages sustained through medical bills and services lost as a result of his son's injuries.

The complaint of the plaintiffs was served on May 26, 1967. Summary judgment was granted the defendant on October 23, 1968.

The decision of the trial judge set forth the following to be the uncontroverted facts as revealed in the pleadings and affidavits.

"On or about 8:20 p. m. on July 24th, 1962, Daniel R. Kemp, the minor plaintiff, while controlling a gasoline powered model airplane by two 50-foot wire cables attached to the wing and held in his hand, contacted one of the electrical wires of the defendant corporation. Daniel was seriously injured. When the accident occurred he was standing between 40 and 50 feet west of the transmission lines. These lines extended from tower to tower and transmitted 138,000 volts of electricity. The wires carrying this electricity were uninsulated. The vertical clearance from ground to wire was at least 29 feet at the point where the wire of the airplane contacted the wire of the defendant corporation. The towers supporting the wires were 573 feet apart. One tower was 314 feet from the point of contact and the other 259 feet from that point. On the tower pilings was a sign 'Warning of High Voltage.' The minor plaintiff on other occasions prior to the accident had seen the sign 'Warning of High Voltage' and he knew that the wires carried a higher voltage than the wires in his home."

In granting the defendant's motions for summary judgment [1] as to both causes of action, the trial court determined there was no substantial issue of fact to be tried.

---

[1] Sec. 270.635, Stats.

"The rules under which this court approaches questions on summary judgments are well established." *Skyline Construction, Inc. v. Sentry Realty, Inc.* (1966), 31 Wis. 2d 1, 4, 5, 141 N. W. 2d 909.

" ' "The rules governing summary judgments are well known and have been frequently stated and explained by this court. Under the rule of *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 105 N. W. (2d) 305, and *Dottai v. Altenbach* (1963), 19 Wis. (2d) 373, 120 N. W. (2d) 41, we first examine the moving papers and documents to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 270.635 (2), Stats., and if he has, we then examine the opposing party's affidavits and other proof to determine whether facts are shown which the court deems sufficient to entitle the opposing party to a trial. If the material facts are not in dispute and if the inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion, then only a matter of law is presented which should be decided upon the motion. *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9; *Rabinovitz v. Travelers Ins. Co.* (1960), 11 Wis. (2d) 545, 105 N. W. (2d) 807; *Bond v. Harrel* (1961), 13 Wis. (2d) 369, 108 N. W. (2d) 552."

" 'We have also pointed out on numerous occasions that a summary judgment is not to be easily granted, but only upon a clear showing that no *substantial* issue of fact exists.

" ' "We have often said that the power of the courts under the summary-judgment statute (sec. 270.635, 33 W. S. A., p. 309) is drastic and should be exercised only when it is plain there is no substantial issue of fact or of permissible inference from undisputed facts to be tried. . . ." ' " (Emphasis added.) *Jahns v. Milwaukee Mut. Ins. Co.* (1968), 37 Wis. 2d 524, 527, 528, 155 N. W. 2d 674.

"The summary-judgment procedure is not to be a trial on affidavits. A party opposing summary judgment defeats the motion if he shows by affidavits, or other proof, that there are substantial issues of fact or reasonable inferences which can be drawn from the evidence. The

court does not try the issues but decides on summary judgment whether there is a substantial issue to be tried. *Buss v. Clements* (1963), 18 Wis. 2d 407, 412, 118 N. W. 2d 928; *Trczyniewski v. Milwaukee* (1961), 15 Wis. 2d 236, 238, 112 N. W. 2d 725." *Jahns v. Milwaukee Mut. Ins. Co., supra,* page 530.

The plaintiffs take the position that (1) there exists a substantial issue of fact to be tried by the jury, and (2) that the defendant is strictly liable for any injury resulting from escaping electricity (second cause of action).

## Substantial Issue of Fact

Plaintiffs submit that a substantial factual issue exists as to whether defendant has complied with the applicable statutes and regulations dealing with the maintenance of their power lines and equipment. The applicable statutes involved are sec. 196.67, Stats.,[2] and sec. 196.74 [3]

---

[2] "Warning signs. (1) Every corporation, company or person constructing, operating or maintaining an electric transmission line with a voltage of six thousand or more between conductors or between conductors and the ground shall place warning signs, not less than four feet nor more than six feet from the ground, upon all poles or other structures supporting such line when within one hundred feet of school grounds; and when within one hundred feet of any place where such line crosses a public highway; and when within any city or village.

"(2) Every such sign shall be in red, black, orange or reflective letters not less than 2 inches high on a contrasting background and shall read 'Danger—High Voltage.' The commission may establish standards for electric transmission line pole signs having at least equivalent warning qualities to signs specified in this subsection, and warning signs meeting standards established or approved by the commission shall be deemed to be in compliance with this section.

"(3) Any corporation, company or person violating any of the provisions of this section shall be fined not less than fifty dollars nor more than three hundred dollars for each offense."

[3] "Electric lines; safety and interference. Every public utility and every railroad which owns, operates, manages or controls along

together with pertinent sections of the electrical code in Vol. 4 of the Wisconsin Administrative Code. Defendant's affidavits included a survey made by Harvey E. Bartelt, a registered land surveyor for the state of Wisconsin, who, on July 25, 1962, surveyed the wire and ground elevations of defendant's transmission lines at the scene of the accident. Defendant's moving papers also included the affidavit of Mr. Carl N. Peters, superintendent of transmission and underground engineering for defendant and a registered professional engineer, who stated, upon personal knowledge, that he was familiar with the requirements of the Wisconsin state electrical code and that the minimum requirements provided therein had been met at the scene of the accident. These documents were sufficient to make a prima facie case for defendant that it had complied with the applicable statutes and regulations.

On the other hand, plaintiffs' affidavits and moving papers are insufficient to raise any issue concerning

or across any public or private way any wires over which electricity or messages are transmitted shall construct, operate and maintain such wires and the equipment used in connection therewith in a reasonably adequate and safe manner and so as not to unreasonably interfere with the service furnished by other public utilities or railroads. The public service commission is authorized to issue orders or rules, after hearing, requiring electric construction and operating of such wires and equipment to be safe and may revise these orders or rules from time to time as may be required to promote public safety. If a complaint is filed with the commission by any interested party to the effect that public safety or adequate service requires changes in contruction, location or methods of operation, the commission shall give notice to the parties in interest of the filing of such complaint, and shall proceed to investigate the same and shall order a hearing thereon. After such hearing the commission shall order any alteration in construction or location or change of methods of operation required for public safety or to avoid service interference, and by whom the same shall be made. The commission shall fix the proportion of the cost and expense of such changes, which shall be paid by the parties in interest, and fix reasonable terms and conditions in connection therewith."

noncompliance with these statutes. Plaintiffs submitted, in defense of the motion for summary judgment, parts of a deposition of Carl N. Peters along with the affidavit of Robert Kemp. The only allegation of statutory non-compliance is in the affidavit of Robert Kemp and the assertion that the signs in the area of the accident merely stated "Danger—High Voltage" and "gives no warning of the dangerous propensities of the wires located between the pylons . . . that such signs are improperly colored, upon *information and belief,* according to the Wisconsin Electrical Code . . . and that code requirements set forth only a minimum standard of care." (Emphasis added.) An allegation based upon information and belief is not sufficient to raise a jury question on motion for summary judgment.

". . . As we stated in *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 290, 96 N. W. (2d) 607, and in *Townsend v. Milwaukee Ins. Co.* (1962), 15 Wis. (2d) 464, 113 N. W. (2d) 126, an affidavit upon information and belief is not sufficient to raise a jury question. We pointed out in *McChain, supra,* that such an affidavit is not an affirmance on knowledge and it is not proof. It does not satisfy the requirements of the statute, sec. 270.635 (2), the 'setting forth such evidentiary facts.' " *McCluskey v. Thranow* (1966), 31 Wis. 2d 245, 253, 254, 142 N. W. 2d 787.

There is, therefore, no substantial factual issue as to defendant's not having complied with applicable regulations and statutes.

Nevertheless, plaintiffs argue that statutory compliance is only a minimum standard of care. On the other hand, defendant contends that compliance with the statutes and code requirements precludes any question of liability for the jury. Both parties have made their arguments concerning the statutes and regulations without inquiry into whether they are "safety statutes," the violation of which may be negligence per se.[4] However, as previously

---

[4] *Schicker v. Leick* (1968), 40 Wis. 2d 295, 162 N. W. 2d 66.

stated, the affidavits and documents before the trial court do not reflect that there was a substantial issue of fact concerning any possible violation of such statutes or regulations.

Of greater significance in this case is the well-established rule that the enactment of safety statutes or legislation giving a commission jurisdiction over a certain activity does not abolish the duty arising under common-law negligence.[5] We stated in *Blanchard v. Terpstra* (1967), 37 Wis. 2d 292, 299, 155 N. W. 2d 156:

". . . a safety statute merely establishes a minimum standard of care and the conduct, even though sanctioned or in conformity with the statute, is not thereby necessarily relieved of conforming to the common-law requirements of ordinary care. In any event the establishment of a statutory definition of negligence per se does not thereby result in a preemption of the entire negligence question. There remains the question of possible common-law negligence."

The Restatement, 2 *Torts* 2d, p. 39, sets forth section 288C as follows: [6]

"Sec. 288C. **Compliance With Legislation or Regulation**
"Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions." [7]

---

[5] *Schulz v. Chicago, M., St. P. & P. R. R.* (1952), 260 Wis. 541, 51 N. W. 2d 542.

[6] The Restatement, 2 *Torts* 2d, pp. 25, 40, secs. 286 and 288, suggests guidelines to be followed in determining whether a legislative enactment or administrative regulation should be used in the court's determination of the standard of reasonable care in a negligence action. This court has closely followed these principles. *See Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 147 N. W. 2d 277.

[7] "Comment:

"*a.* Where a statute, ordinance or regulation is found to define a standard of conduct for the purposes of negligence actions, as stated in secs. 285 and 286, the standard defined is normally a

Thus, the question in the case at bar is whether plaintiffs, by their affidavits and moving papers, have alleged special facts or unusual circumstances sufficient to demonstrate a substantial issue of fact for a jury determination of whether the defendant breached a duty to plaintiffs in failing to take steps in addition to those required by statute and administrative regulation.[8]

Plaintiffs allege that a 138,000 volt uninsulated high-tension line runs through the neighborhood at a height of 29 feet; that the three block radius around the site of the accident is highly residential, with a large number of children who often play in the area of the accident, engaging in kite flying, tree climbing and other such normal activities; that these activities of the children took place when defendant's repair and service crews were present; and flying a model gasoline airplane of the type flown by Daniel Kemp is a common activity of children that age who also seek out available vacant lots from which their models can be flown.

---

minimum standard, applicable to the ordinary situations contemplated by the legislation. This legislative or administrative minimum does not prevent a finding that a reasonable man would have taken additional precautions where the situation is such as to call for them. . . . Where there are no such special circumstances, the minimum standard prescribed by the legislation or regulation may be accepted by the triers of fact, or by the court as a matter of law, as sufficient for the occasion; but if for any reason a reasonable man would take additional precautions, the provision does not preclude a finding that the actor should do so." Restatement, *supra*, page 40. *See also* Prosser, *Law of Torts* (3d ed.), p. 205, sec. 35.

[8] ". . . Foreseeability of a possibility of harm is not enough to establish negligence. It is the reasonable probability that harm might ensue which is the basis of foreseeability as an element of negligence. *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372; *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. 2d 39, 117 N. W. 2d 597; *Meihost v. Meihost* (1966), 29 Wis. 2d 537, 139 N. W. 2d 116." *Olsen v. Milwaukee Waste Paper Co.* (1967), 36 Wis. 2d 1, 5, 153 N. W. 2d 45.

On the other hand, plaintiffs' affidavits do not allege that the area was normally used for flying model airplanes. There is no allegation that any type of accident previously took place in the vicinity and defendant claims no knowledge of any model airplanes being flown in the area where the accident took place. Defendant's moving papers included depositions of the plaintiffs which show that neither plaintiff had any knowledge of any model airplanes having ever been flown in the area before, and the day of the accident was the first time Daniel had flown any model airplane of a similar type.

Plaintiffs also allege defendant was negligent in failing to trim the bushes around the tower with the result that the posted warning signs were hidden from view on the day of the accident. However, depositions of the plaintiffs submitted by defendant establish that Daniel and his father had seen the signs; that Daniel was aware of the wires and that they were of higher voltage than at his home; and that he understood the hazards of electricity.

Are these averments of fact so devoid of special circumstances that we or a trial court can say as a matter of law that a jury could not find that the defendant had a duty to take additional steps for the reasonable protection of children in the neighborhood. We think not. The trial judge concluded, properly we think, that the defendant could not have foreseen the likelihood of the particular accident occurring. From this, however, he concludes that the conduct was not negligent. It is clear, however, that the proper test to be applied is that the " 'harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence.' There is no necessity, however, that the actual harm that resulted from the conduct be foreseen." *Cirillo v. Milwaukee* (1967), 34 Wis. 2d 705, 711, 150 N. W. 2d 460.

The question is admittedly a close one. The verdict of the jury might well vindicate the trial judge's position that harm, even of a general nature, could not be foreseen as the consequences of defendant's conduct. Such a conclusion, however, is in this case by no means so clear that plaintiff should have his case decided against him by the use of summary judgment affidavits alone. We conclude that the facts determinative of the defendant's negligence are in issue and must be determined by a jury.

In addition to the authorities cited in the briefs of the respective parties, each party, with leave of this court, submitted further citations of authority after oral argument. All have been considered.

## STRICT LIABILITY

Plaintiffs argue that strict liability, as that term is defined in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55, should apply to electricity escaping from high-tension transmission wires maintained by the defendant where that escape causes injury to a member of the public. In *Dippel* this court adopted the rule set forth in Restatement, 2 *Torts* 2d, sec. 402A; however, this case does not involve any sale of a defective product nor is it in any way similar to products liability cases grounded on sec. 402A.

"The term *strict* liability in tort might be misconstrued and, if so, would be a misnomer. *Strict liability does not make the manufacturer or seller an insurer nor does it impose absolute liability.* From the plaintiff's point of view the most beneficial aspect of the rule is that it relieves him of proving specific acts of negligence and protects him from the defenses of notice of breach, disclaimer, and lack of privity in the implied warranty concepts of sales and contracts.

"From a reading of the plain language of the rule, the plaintiff must prove (1) that the product was in defective condition when it left the possession or control

of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it." (Emphasis added.) *Dippel v. Sciano, supra,* pages 459, 460.

The electricity which injured Daniel Kemp had not been sold but was still in the control of the defendant. *Dippel,* therefore, has no application to the facts of this case.

Furthermore, the defendant's dealing with high-voltage lines does not make it absolutely liable for any injuries regardless of whether any negligence is involved.

". . . While a high degree of care is required of those who undertake to generate and transmit electricity, the liability is nevertheless grounded upon negligence and is not the liability of an insurer. . . ." *Oesterreich v. Claas* (1941), 237 Wis. 343, 349, 350, 295 N. W. 766.

The trial court was correct in finding that the concepts of strict liability have no application to defendant in this case.

*By the Court.*—Judgment reversed.