319 So.2d 334 (1975)
Terry N. BURLEY
v.
LOUISIANA POWER & LIGHT CO. et al.
COAL OPERATORS CASUALTY CO.
v.
LOUISIANA POWER & LIGHT COMPANY et al.
Nos. 56010, 56036.
Supreme Court of Louisiana.
September 5, 1975.
Rehearing Denied October 9, 1975.
*335 James C. Cockfield, Cockfield & Gravolet, New Orleans, for plaintiff-applicant in 56010.
W. Malcolm Stevenson, Monroe & Lemann, Allen H. Danielson, Jr., O'Keefe, O'Keefe & Berrigan, New Orleans, for defendant-respondent in 56010.
W. Malcolm Stevenson, Monroe & Lemann, New Orleans, for defendant-applicant in 56036.
James C. Cockfield, Cockfield & Gravolet, Allen H. Danielson, Jr., O'Keefe, O'Keefe & Berrigan, New Orleans, for plaintiff-respondent in 56036.
SUMMERS, Justice.
This tort action was instituted by Terry N. Burley to recover for personal injuries and damages arising out of an industrial accident in which he received a serious electric shock when a metal reinforcing rod he was installing came in contact with an electric power line.
The accident occurred on October 25, 1967 while he was working on the construction of an addition to the Belle Chasse purification plant in Plaquemines Parish. He named Louisiana Power and Light Company, the owner of the electric power line, and their liability insurers, ABC Insurance Company and XYZ Insurance Corporation, as defendants.
In a separate proceeding Coal Operators Casualty Company, the workmen's compensation insurer of Westbank Reinforcing Steel Corporation, Burley's employer, sought judgment as Burley's subrogee against Louisiana Power and Light Company, Pratt-Farnsworth, the principal contractor on the construction project, and Plaquemines Parish, the owner of the purification plant, for compensation paid to Burley. Prior to trial Coal Operator's suit against Pratt-Farnsworth was dismissed by stipulation, and the cases were consolidated for trial.
Burley was severely injured when a metal reinforcing rod he was working with on the third floor of an unfinished building came in contact with an uninsulated public utility electric power line operated at 13.8 KV phase to phase (13,800 volts). At the time the line was only five feet seven inches from the edge of the building near the level of the floor on which Burley was standing.
Judgment was rendered in Burley's favor in the district court against Louisiana Power and Light Company, awarding him $165,500. Coal Operators Casualty Company was decreed to be entitled to reimbursement for compensation paid to Burley.
Louisiana Power and Light Company appealed, and Burley answered the appeal claiming an increase in damages. Finding that the National Electric Safety Code was introduced into evidence at the trial by Burley without supporting evidence to establish a foundation for its introduction, the Fourth Circuit concluded that there was no evidence that the code's safety standards were accepted officially by a governmental agency or by experts in the *336 field. Thus, the court reasoned, no probative weight could be given to the code's safety standards. Accordingly, the Court of Appeal did not reach the merits of the case. Instead, acting upon the authority of Article 2164 of the Code of Civil Procedure, the Court of Appeal set aside and annulled the trial court judgment and remanded the case to the trial court "in order to afford an opportunity for all parties to submit any evidence which they deem appropriate to show applicability of the National Electric Code."
In separate applications Burley and Louisiana Power and Light Company applied to this Court for certiorari. Each urges that the case not be remanded and that it should have been decided on the record as presently formed.
Burley contends that there is evidence in the record upon which the Court of Appeal could conclude that the National Electrical Safety Code is a standard which was followed by L P & L; and that L P & L's replies to interrogatories propounded by Burley establish this fact. These admissions, Burley contends, constitute evidence that L P & L has adopted the code's standards. The code's standards are therefore relevant evidence which the Court of Appeal should have considered without remand. Alternatively, he contends that a certified copy of an ordinance of the parish of Plaquemines, submitted in connection with his application for rehearing, establishes that the National Electric Safety Code has been adopted as a standard in that parish applicable to this case.
L P & L's application for review asserts that the Court of Appeal, in essence, held that plaintiff had not proved his case of liability by a preponderance of evidence and the remand improperly gives him a second chance to do so.
Two contentions can readily be disposed of:
First, the ordinance of the parish of Plaquemines, upon which Burley relies to support his contention that the National Electric Safety Code has been adopted as an official safety standard in Plaquemines Parish, specifically prescribes that "The provisions of this Ordinance shall not apply to . . . installations used by electric public utility . . . in distribution of electricity . . . in the exercise of their function as such . . . and located outdoors or in buildings used exclusively for that purpose . . ." Obviously, since the ordinance excludes electric public utilities from its regulations, it may not be relied upon to establish safety standards in Plaquemines Parish under the facts of the instant case.
Secondly, L P & L's contention that the Court of Appeal, in essence, held that Burley had not proven his case by a preponderance of evidence is not a necessary inference to be gained from that opinion. Instead, as already noted, it is an acceptable inference that the Court of Appeal made no determination of the merits, and this Court's writ of certiorari was issued upon that premise.
We do not agree that no probative weight could be given to the National Electric Safety Code. Therefore, no remand based upon that proposition was indicated.
The code, found to be properly admitted by the Court of Appeal upon the authority of Section 3713 of Title 13 of the Revised Statutes,[1] is designated as National Bureau *337 of Standards Handbook 81. It is the result of a project sponsored by the U.S. Department of Commerce, National Bureau of Standards, entitled "Safety Rules for the Installation and Maintenance of Electric Supply and Communication Lines." The Handbook consists of definitions, grounding rules, and parts of the National Electric Safety Code, dealing with the construction and maintenance of overhead and underground lines.
The work is the result of agreement by members of the American Standards Association, consisting of the following: Accident Prevention Department of the Association of Casualty and Surety Cos., American Institute of Electrical Engineers, American Mutual Alliance Federation of Mutual Fire Insurance Cos., American Transit Assoc., Association of American Railroads, Association of Edison Illuminating Cos., Edison Electric Institute, International Association of Electrical Inspectors, International Association of Governmental Labor Officials, International Brotherhood of Electrical Workers, International Municipal Signal Association, Inc., National Association of Railroad and Utilities Contractors Assoc., National Electrical Manufacturers Assoc., National Safety Council, Public Service Commission of Wisconsin, Rural Electrification Administration, U.S. Department of Agriculture, The Telephone Group and the Western Union Telegraph Co.
The Bureau, as sponsor of the work, has relinquished its prerogative of determining details in return for the implied understanding that the many parties concerned will accept such a code as they can agree upon themselves.
Other than the code, neither Burley nor L P & L introduced any expert testimony of minimum required vertical and horizontal building clearances for uninsulated wires. Pictures, testimony and interrogatories answered by L P & L show that the line was five feet seven inches from the structure upon which Burley was standing when he was electrocuted.
When Burley's counsel offered the code into evidence to show a violation by L P & L, the latter objected that there was nothing to explain the Code; it was advisory only; and the edition sought to be introduced was not in existence at the time the line was constructed. The code was permitted in evidence subject to the objection.
Burley relies principally upon the provision of the Code dealing with minimum clearances of conductors passing by or over buildings. It prescribes:
"Unguarded or accessible supply conductors carrying voltages in excess of 300 volts may be run either beside or over buildings. The vertical or horizontal clearance to any building or its attachments (balconies, platforms, etc.) shall be as listed below. The horizontal clearance governs above the roof level to the point where the diagonal equals the vertical clearance requirement. From this point the diagonal clearance shall be equal to the vertical clearance requirement . . ."
Below this rule a table sets out that when the voltage supply of the conductor is 8,700 to 15,000 the horizontal and vertical clearance is eight feet, which when considered in connection with the quoted rule is a mandatory requirement. The code requires, not only that the conductors be installed according to these standards, they must likewise be maintained in that manner.
Contrary to L P & L's argument, we do not find the meaning of this provision *338 of the code obscure or confusing. As we read the regulation, all clearance, vertical or horizontal, must be at least eight feet from any part of a building. In the instant case L P & L's conductor was only five feet seven inches from the building and, therefore, it did not conform with this requirement. See Nessmith v. Central Louisiana Electric Co., 257 So.2d 744 (La.App. 1972); Allien v. Louisiana Power & Light Company, 202 So.2d 704 (La.App.1967); Webb v. Louisiana Power & Light Co., 199 So. 451 (La.App.1940); Layne v. Louisiana Power & Light Co., 161 So. 29 (La.App. 1935); Bujol v. Gulf States Utilities Co., 147 So. 545 (La.App.1933); Boudreaux v. Lousiana Power & Light Co., 135 So. 90 (La.App.1931).
L P & L's principal argument has centered upon the contention that the Court of Appeal abused the authority and discretion conferred by Article 2164 of the Code of Civil Procedure. Its efficacy depends, in this case, upon the validity of the Court of Appeal holding that the Code could not be given probative weight as evidence, for it had not been adopted as safety standards by any law or ordinance, and its value and worth had not been supported by any expert testimony.
The general objection that is made to safety codes being used in cases of this kind is that these codes are hearsay evidence, they express opinions, and they are not given under oath with any opportunity for cross-examination. They also deal with controversial and developing subjects in which opinions over the years may change. In this case the safety code was issued in 1961, twelve years before this trial.
Aside from the fact that the National Electric Safety Code has often been received in evidence and given probative weight by the courts of this State (see the decisions cited hereinabove), if a publication is produced by the concerned effort of responsible groups, under sponsorship of a principal bureau of the federal government, all of whom have special knowledge of and experience with the subject matter, and having no motive to falsify, subjecting this large group to cross-examination would do nothing to impair the code's probative force, nor would cross-examination add to the code's weight as evidence. Especially where the groups responsible for drafting the code have every reason to adopt wise standards by which they must abide and which are reasonable and conducive to the general safety. Such is the case here. All of the organizations represented on the American Standards Association have agreed to accept the code; all have extensive expertise and experience in the field; all are concerned with the public interest.
Thus, where evidence of the contents of a publication is admissible under our law (La.R.S. 13:3713), and relevant and material information contained therein should be made available to the trier of facts, and the publication is one which reasonable minds would agree is trustworthy, there appears to be no sound reason why such evidence should not be given such probative weight as it warrants in the court's judgment. In the instant case, National Bureau of Standards Handbook 81 is a publication of the U.S. Government Printing Office.
There is, moreover, the factor of necessity present in this case. Undoubtedly the code is relevant and material to Burley's case, but those who prepared it are not available to testify. The participants are too numerous and too widely scattered. It would be highly impracticable, if not impossible, to gather them together to testify at the trial, and it is doubtful if their testimony would add to, or detract from, the trustworthiness or weight we attribute to it. Thus there is a need to consider this code.
Another argument advanced against consideration of such a code is that the standards created thereby are mere expressions of opinions of the organizations *339 represented in their formulation. Furthermore, the opinions are on a subject matter in which opinions are changing, for the factors involved are constantly developing over the years. But we are not convinced that the code has no merit for this reason. Though the scientific knowledge upon which many of these safety standards are based is not complete or is subject to change is no reason to disregard entirely that knowledge which is available. Otherwise, expert opinions on scientific matters would never be considered by courts. The argument in this respect is more logically directed to the weight of the opinions expressed, it does not render the evidence entirely irrelevant or incompetent.
In these conclusions considerable reliance has been placed upon the decision in Nordstrom v. White Metal Rolling and Stamping Corp., 75 Wash.2d 629, 453 P.2d 619 (1969). See also 5 J. Wigmore, Evidence, ¶ 1420 (3d ed. 1940); 6 J. Wigmore, Evidence, ¶ 1698 (3d ed., 1940, Supp.1964); 75 A.L.R.2d 778; 58 A.L.R.3d 148. Although generally the authorities, when weighed, will demonstrate that the view we have adopted here, and that recognized by the Courts of Appeal in this State for many years, is a minority view, we are convinced of its soundness.
Another consideration which has influenced our judgment is the unmistakable admission contained in L P & L's answer to interrogatories propounded by Burley that the electric power line involved in this case was built to National Electric Safety Code Standards. This answer permits the introduction and consideration of the code as rebuttal evidence to establish the correctness of L P & L's answer if for no other reason. And since reference to the code demonstrates that the line was not maintained according to the code's standards at the time of Burley's injury, it has considerable probative value in that respect.
Inasmuch as we approve the code and agree that it is entitled to probative weight, the Court of Appeal should not have remanded the case to the trial court to receive further evidence to that effect.
The applications for review, the briefs and oral arguments were concerned with the validity of the decree of the Court of Appeal on the question of remand. Since the merits of the case have not been presented to this Court, and that issue has been briefed and argued before the Court of Appeal, we shall remand the case to that court for judgment on the merits. This procedure will give the litigants, and this Court in the event of review, the benefit of the opinion of the Court of Appeal.
For the reasons assigned, these consolidated cases are remanded to the Court of Appeal, Fourth Circuit, for further consideration and for adjudication on the merits.
BARHAM, DIXON and CALOGERO, JJ., concur.
NOTES
[1] La.R.S. 13:3713 provides:

"The official records and other documents, being enactments or regulations or decisions or rulings or proceedings or reports or other official acts, of the congress or any federal executive department or subdivision therein, or of any federal court or commission or board or agency or public institution, may be evidenced by the federal register or by a printed book or pamphlet or periodical purporting to be published by the U.S. Government Printing Office at Washington, D.C., by authority, which shall be received in all courts and proceedings of this state and by all officers of this state as prima facie evidence of the records, documents, enactments, regulations, decisions, rulings, proceedings, reports or other official acts of the departments, subdivisions, courts, commissions, boards, agencies or public institutions from which they purport to emanate, and the same may be read and referred to as such in any and all courts of this state."