YAMPA VALLEY ELECTRIC ASSOCIA-
TION, INC., a Colorado corporation,
Petitioner/Cross–Respondent,

v.

Gloria G. TELECKY, Respondent/Cross–
Petitioner.

No. 92SC384.

Supreme Court of Colorado,
En Banc.

Sept. 27, 1993.

Hall & Evans, Peter F. Jones, Malcolm S. Mead, Robert J. McCormick, Denver, for petitioner/cross-respondent.

Kenneth L. Keene, Denver, Spence, Moriarity & Schuster, J. Douglas McCalla, Jackson, WY, Philip White, Jr., Laramie, WY, for respondent/cross-petitioner.

Justice ERICKSON delivered the Opinion of the Court.

This wrongful death action was brought by Gloria Telecky to recover damages for the electrocution death of her husband, Marvin, by electric power lines that were constructed and maintained by the Yampa Valley Electric Association (Yampa Valley). We granted certiorari to review the court of appeals decision in *Telecky v. Yampa Valley Electric Association*, 837 P.2d 253 (Colo.App.1992), which reversed a judgment entered on a jury verdict in favor of Yampa Valley, and ordered a new trial.

We granted certiorari to review two issues:

Whether a jury must be informed as to the circumstances sufficient to rebut the presumption created by Instruction 20; and

Whether Instruction 20 implied to the jury that compliance with an administrative standard was equivalent to exercising the highest degree of care possible.

Both issues are moot if Instruction 20 was improperly given. Because we decide that both the trial court and the court of appeals erred in concluding that Instruction 20 was proper in this case, we need not, and do not, decide the issues set forth by the parties for review on certiorari. The two issues we decline to address are necessarily conditioned on the premise that the court of appeals correctly held that Instruction 20 was proper in this case as an accurate statement of the applicable law, a conclusion which we now hold was erroneous.

The primary issue on appeal is whether the trial court erroneously gave Instruction 20 to the jury regarding the presumptive effect of Yampa Valley's compliance with the National Electric Safety Code (NESC) in the construction and maintenance of the power line that crossed the Telecky property. We affirm the order of the court of appeals granting a new trial, but reverse, in part, because of the directions given for the new trial, and return this case to the court of appeals for remand to the trial court for a new trial consistent with the directions contained in this opinion.

I

On October 13, 1986, Marvin Telecky was electrocuted when the aluminum ladder he was using to perform maintenance work on his two story home came in contact with an

uninsulated 7,200 volt high tension electric power line. The power line, which was constructed and maintained by Yampa Valley, ran from the street in front of the Telecky residence, across the side yard of the property, to a pole and transformer in the backyard.

Marvin Telecky's widow filed a wrongful death action against Yampa Valley that was predicated on the recognition that "electricity is one example of an instrumentality requiring an enhanced degree of care by those supplying it to others for domestic and commercial use." *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 588 (Colo. 1984). Therefore, the negligence standard of care to which Yampa Valley is to be held in this case is that of "the highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the particular art." *Denver Consol. Elec. Co. v. Simpson,* 21 Colo. 371, 376–77, 41 P. 499, 501 (1895); *accord Fed. Ins. Co. v. Public Serv. Co.,* 194 Colo. 107, 570 P.2d 239 (1977). Telecky alleged in her complaint that Yampa Valley negligently failed to: (1) warn Marvin of the dangers of the power line; (2) bury the power line below ground; (3) insulate the

power line; (4) provide adequate clearance around the power line; (5) reduce the voltage in the power line before running it across the Telecky property; and (6) place the uninsulated wire at a greater distance from the residence, all of which would have reduced Marvin Telecky's risk of death by electrocution.

A dispute existed in the trial court as to whether the power lines were constructed and maintained in compliance with the NESC, which the Colorado Public Utilities Commission (PUC) presumes is reflective of "accepted good engineering practice in the electric industry" for purposes of regulating electric utilities that are subject to its jurisdiction.[1] At the time of trial, it was assumed by all parties, and the trial court, that Yampa Valley was regulated by the PUC and was subject to PUC Rule 18. 4 Code Colo.Reg. 723–3. It was later determined that Yampa Valley had given the requisite notice that exempted the utility from the jurisdiction of the PUC. *See* §§ 40–9.5–103 –104, 17 C.R.S. (1993). Neither Yampa Valley nor Telecky brought Yampa Valley's exemption from PUC jurisdiction to the trial court's attention.[2]

At the conclusion of five days of testimony, counsel for both Telecky and Yampa

---

**1.** The National Electric Safety Code (NESC) is the result of a project sponsored by the National Bureau of Standards and the United States Bureau of Commerce, with the assistance of many leading industry representatives. *Burley v. Louisiana Power & Light Co.,* 319 So.2d 334, 336–37 (La.1975). The NESC provides the basic guidelines for the electric industry and represents the mature judgment and experience of professionals in the electric industry. *Alabama Power Co. v. McIntosh,* 219 Ala. 546, 122 So. 677, 680 (1929).

**2.** The Public Utilities Commission (PUC) issued Rule 18 for the purpose of implementing and interpreting the requirement in § 40–5–101, 17 C.R.S. (1993), that utilities obtain a certificate of public convenience and necessity for new construction and extensions, and to set forth the requirements for utilities to submit generation and construction schedules. *See* PUC Decision No. C82–675 (May 4, 1982). PUC Rule 18 was modified to add changes on November 30, 1983. *See* PUC Decision No. C83–1791 (November 30, 1983). For purposes of this case, PUC Rule 18, as modified, provided in pertinent part:

*Intention*
The basis and purpose for Rule 18, as amended, are: (1) To set forth the construction requirements to be observed by utilities offering electric service; ...
*Construction Requirements*
(a) The electric plant of the utility shall be constructed, installed, maintained and operated in accordance with *accepted good engineering practice in the electric industry* to assure so far as reasonably possible, continuity of service, uniformity in the quality of service furnished and the safety of persons and property.
(1) The utility shall use *as a minimum standard of accepted good engineering practice* the current edition of the National Electric Safety Code, dated September 26, 1983.
. . . .
(3) Any electric plant of the utility that is constructed, installed maintained and operated in accordance with the National Electric Safety Code in effect at the time of its construction or installation *shall be presumed to comply with accepted good engineering practice in the electric industry and the provisions of this rule.*
(Emphasis added.)

Valley submitted proposed jury instructions to the trial court. Telecky's tendered Instruction 19 was a negligence per se instruction which advised the jury that Yampa Valley should be found negligent if the jury found that Yampa Valley had failed to comply with NESC industry standards. The trial court gave Instruction 19 and that instruction is not an issue on appeal.[3] However, in response to Instruction 19, Yampa Valley requested, and the trial court gave, Instruction 20 which is the primary issue before us on certiorari.[4] Instruction 20 creates a rebuttable presumption and is based on CJI–Civ.3d 3:5 (1988). It cannot be disputed that the rebuttable presumption language contained in Instruction 20 was based entirely on PUC Rule 18 and not on other generally accepted common law principles. Instruction 20 provided:

### Instruction No. 20

Presumptions are rules based upon experience or public policy and established in the law to assist the jury in ascertaining the truth.

If you find by a preponderance of the evidence that the Telecky electric distribution line was constructed, installed and maintained in accordance with the applicable National Electric Safety Code, then the law presumes that the line complied with accepted good engineering practice in the electric industry.

You must consider this presumption together with all other evidence in the case in determining whether or not Yampa Valley Electric, Inc. negligently constructed the line.

The trial court, however, rejected Instructions 1 and 8 which Telecky offered to clarify the effect of Yampa Valley's compliance with the NESC and the standard of care applicable in negligence cases involving electric utilities. Telecky's tendered instructions stated:

### Instruction No. 1

You are instructed that while conformity with the National Electric Safety Code standard is not an absolute defense to negligence while it may be evidence of due care, compliance with industry standards, or standards legislatively or administratively imposed, does not preclude a finding of negligence where a reasonable person would have taken additional precautions under the circumstances.

### Instruction No. 8

The National Electric Safety Code contains minimum requirements and guidelines for the design, construction and maintenance of power lines.

The trial court concluded that Instructions 1 and 8 did not clarify the effect of Yampa Valley's compliance with the NESC, but would instead instruct the jury on the circumstances when the presumption in In-

---

3. Telecky based her argument in favor of a negligence per se instruction on her allegation that Yampa Valley's failure to comply with NESC standards violated PUC regulations. It is well established that the violation of a statute or ordinance may constitute negligence per se if the plaintiff establishes that he is a member of the class the statute was intended to protect, and that the injuries he suffered were of the kind the statute was enacted to prevent. *Largo Corp. v. Crespin,* 727 P.2d 1098, 1107–08 (Colo.1986). Telecky argued that if Yampa Valley were subject to PUC rules a negligence per se instruction was justified. We have never addressed the question of whether the violation of NESC standards by a PUC regulated utility constitutes negligence per se. We need not, and do not decide the question here because it is undisputed that, in this case, Yampa Valley is not subject to

regulation by the PUC and the issue will not be involved in the retrial.

4. Following Telecky's objection to the giving of instruction 20, the trial court stated that:

Because this Court believes it would be unfair and contrary to the intent of the regulation to, on the one hand, say that if the power company complies or does not comply with the code, it's negligence per se [Instruction 19]. But if they comply with the code, they·get nothing other than the decision of competing experts as to what good engineering is. That's contrary to what the rule says and certainly what this Court believes the intent of the Public Utility Regulations are as testified to by the various witnesses during the course of this trial. So for that reason, the Court has given the instructions as proposed.

struction 20 is rebutted. The trial court stated that:

> there are instructions regarding the nature of the industry and the requirement that the defendant use the best engineering available.... And the Court concludes that as now styled the model instruction [CJI Civ.3d 3:5] makes no reference to rebuttal of that presumption but merely indicates that it is a part of the evidence to be considered by the jury.

The jury returned a verdict in favor of Yampa Valley and Telecky appealed to the court of appeals. Telecky claimed that Instruction 20 was erroneous because at all times relevant to this case Yampa Valley was exempt from PUC regulation, and that, therefore, Instruction 20 contained statements of law that had no application to this case. Alternatively, Telecky asserted that Instruction 20 was prejudicially misleading in that it instructed the jury that compliance with the NESC was legally presumed to be compliance with "accepted good engineering practice." Telecky claimed that the legal presumption mandated by the instruction was misleading because if the jury found that Yampa Valley complied with the NESC, it could not find that Yampa Valley had not followed "accepted good engineering practice," and was negligent under the higher standard of care required of electric utilities.

The court of appeals concluded that the trial court did not err when it gave the jury Instruction 20 which included the rebuttable presumption derived from PUC Rule 18 because the instruction is a correct statement of law regardless of Yampa Valley's exemption from regulation by the PUC. *Telecky*, 837 P.2d at 255. The court of appeals also held that the challenged instruction was an incomplete and confusing statement of the applicable law because it did not instruct the jury on what would be sufficient to rebut the presumption. In ordering a new trial, the court of appeals directed the trial court on retrial to give Telecky's proposed Instructions 1 and 8 in addition to Instruction 20. *Id.* We disagree that Instruction 20, when PUC Rule 18 is not applicable, is a correct statement of the law that should be given on retrial and reverse the court of appeals direction to the trial court in that regard. Giving Instruction 20 in this case was not harmless error and the error requires a new trial. Accordingly, we affirm the court of appeals reversal of the judgment for Yampa Valley and the order for a new trial. On retrial, the trial court must fully and correctly instruct the jury on the legal significance of Yampa Valley's compliance with NESC standards.

## II

■ The court of appeals determined, and the parties agree, that PUC Rule 18 does not apply to this case and that Instruction 20 could not be based on PUC rules and regulations because Yampa Valley exempted itself from PUC jurisdiction prior to the adoption of amended PUC Rule 18. *Telecky*, 837 P.2d at 254; *see* § 40–1–103(2)(a), 17 C.R.S. (1993); § 40–9.5–103, 17 C.R.S. (1993).[5] However, the court of appeals concluded that even if PUC Rule 18 was not applicable to Yampa Valley, Instruction 20 was proper in this case because it is a correct statement of law. We disagree.

■ The purpose of jury instructions is to provide the jury with the applicable law so that its attention will be directed to the specific issues that are to be determined. *Rio Grande S. R.R. Co. v. Campbell*, 44 Colo. 1, 20, 96 P. 986, 992 (1908). As such, instructions should embrace only the correct statements of law by which the evidence is to be examined and applied. *Id.* Here, there is no statute or rule to support the presumption created by Instruction 20. Therefore, the presumption can only be properly given if it is supported by common law rules governing the admissibility and

---

5. At all times relevant to this case, the rules established by the PUC for purposes of regulating utilities apply only to such entities as are "operating under the jurisdiction of the Public Utilities Commission." *See* PUC Rule 1. Yam-

pa Valley, by a majority vote of its membership, chose to exempt itself from PUC jurisdiction and regulation in August, 1983. Therefore, PUC rules, including Rule 18, do not apply to Yampa Valley.

evidentiary effect of Yampa Valley's compliance with the NESC. If, however, the presumption created by Instruction 20 is an incorrect statement of the common law, the trial court erred in giving the instruction to the jury. *See e.g., Felder v. Union Pac. R.R. Co.,* 660 P.2d 911, 914 (Colo.App.1982) (stating that a party is not entitled to an instruction that contains a wrong statement of the applicable law).

■ Evidence of a defendant's compliance with applicable industry standards in a tort case is both relevant and admissible for purposes of determining whether the defendant either breached, or satisfied, the duty of care it owed to an injured plaintiff. *Union Supply Co. v. Pust,* 196 Colo. 162, 177, 583 P.2d 276, 286–87 (1978); *accord Muncie Aviation Corp. v. Party Doll Fleet, Inc.,* 519 F.2d 1178, 1180–81 (5th Cir.1975); *Alabama Power Co. v. McIntosh,* 219 Ala. 546, 122 So. 677, 680 (1929); *Burley v. Louisiana Power & Light Co.,* 319 So.2d 334, 336–37 (La.1975). Even though evidence of compliance with industry standards is admissible, such evidence is not conclusive on the issue of due care. *Blueflame Gas,* 679 P.2d at 591 (stating that "compliance with an administrative safety standard ... is merely a circumstance to be weighed with other factors and, by itself, is not necessarily conclusive on the issue of due care or negligence"); *Woodis v. Oklahoma Gas & Elec. Co.,* 704 P.2d 483, 486–7 (Okla.1985) (stating that "compliance with the [NESC] is not conclusive evidence of the electric company's exercise of due care, but only one factor to be considered").

■ In determining the issue of negligence, Yampa Valley is to be held to the "highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the art" because it is an electric utility. *Smith v. Home Light & Power Co.,* 734 P.2d 1051, 1058 (Colo.1987) (quoting *Denver Consol.,* 21 Colo. at 376–77, 41 P. at 501); CJI–Civ.3d 9:5 (1988). Yampa Valley's compliance with NESC standards is only a part of the determination that the jury was required to make in this case. "[C]ompliance with [the NESC] does not conclusively establish that the highest degree of care was exercised, but is merely one circumstance to be considered in determining" whether Yampa Valley was negligent in constructing and maintaining the power lines that crossed the Telecky property. *Blueflame Gas,* 679 P.2d at 591.

■ The fact that Yampa Valley may have complied with NESC standards in this case requires only that the jury be instructed that compliance with NESC standards satisfies the minimum safety requirements of the electric industry. *See, e.g., Freeman v. Kansas City Power & Light Co.,* 502 S.W.2d 277, 283 (Mo.1973) (stating that the NESC is an admission of a minimum standard of conduct within the electric industry); *Sulpher Springs Valley Elec. Coop., Inc. v. Verdugo,* 14 Ariz.App. 141, 481 P.2d 511, 519 (1971) (holding that the minimum standards contained in the NESC are not conclusive on the question of due care when the particular circumstances justify a finding of lack of due care).

C.R.E. 301 states that a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption. There are two reasons why we do not agree that Telecky should bear the burden of going forward with evidence to rebut the presumed fact that compliance with the NESC establishes "accepted good engineering practice" for purposes of tort liability. First, the fact that a utility company has complied with "accepted good engineering practices" is not dispositive of whether the utility was negligent in the activities which resulted in Marvin Telecky's electrocution. Second, it is almost impossible for a plaintiff to present evidence to establish that compliance with NESC standards *was not,* under the facts of a particular case, "accepted good engineering practice," that would rebut the presumption. It is the utility's compliance with the entire industry's practices that has been presumed to meet acceptable standards.

In our view, the NESC represents minimum industry standards that have been established for purposes of assisting the electric industry to better define and implement uniform construction requirements that would generally be applicable to the entire industry. While the two purposes for which the NESC standards were promulgated (uniform construction requirements and duty of care requirements) are interrelated, they are not equivalent or co-dependent.[6]

On retrial, Yampa Valley is not precluded from offering evidence of its compliance with NESC standards, or any other relevant evidence, that would assist the jury in determining whether it exercised the required standard of due care imposed on it in constructing, maintaining, and operating the power line that crossed the Telecky property. Yampa Valley is not, however, entitled to an instruction creating a rebuttable presumption that adherence to the NESC standards presumes compliance with "accepted good engineering practice in the electric industry." Whether Yampa Valley complied with accepted good engineering practices, or whether it exercised due care in this case, is best determined by the jury after it has examined the relevant evidence and been properly instructed concerning the effect of Yampa Valley's compliance with NESC's minimum standards. "Justice is usually more certainly served by deciding cases on evidence, if available, than by indulging in presumptions." *Rotramel v. Public Service Co.*, 546 P.2d 1015, 1018 (Okla.1975).

### III

The trial court committed reversible error in giving Instruction 20 to the jury because there is no statutory or common law justification to support the rebuttable presumption contained in the instruction. We agree with the court of appeals that a new trial is necessary. The trial court's failure to properly instruct the jury is reversible error that requires a new trial in this case. *See Mile Hi Concrete, Inc.· v. Matz*, 842 P.2d 198, 206 (Colo.1992) (stating that the trial court committed reversible error in giving an improper rebuttable presumption instruction); *Hise v. Romeo Stores Co.*, 70 Colo. 249, 253, 199 P. 483, 485 (1921) (reversing a judgment based on an erroneous instruction).

Accordingly, we affirm in part, reverse in part, and return this case to the court of appeals with directions to remand to the trial court for a new trial consistent with this opinion.

ROVIRA, C.J., specially concurs.

Chief Justice ROVIRA specially concurring:

I agree with the majority's conclusion that the court of appeals erroneously concluded that Instruction 20 properly states the law applicable in this case. I also concur in the conclusion that the trial court committed reversible error by tendering Instruction 20 to the jury. I write separately to emphasize my view that on retrial, the Yampa Valley Electrical Association, Inc. ("Yampa Valley") is entitled to an instruction creating a rebuttable presumption that

**6.** The potential tort liability of utility companies is necessarily dependant on the utility's action or inaction as it relates to individuals in specific cases. Construction requirements of electric plants or distribution facilities, on the other hand, involve specialized concerns relating to electric power distribution systems as a whole. The fact that construction requirements placed on individual rural utility companies may differ depending on the utilities and their individual customers is recognized in the Engineering and Operations Manual for Rural Electric Systems which provides:

*The National Electric Safety Code as a Basis for Distribution Line Design*

The [NESC] ... specifies the minimum requirements for strength and clearances to be used in power line construction. Because of diverse weather conditions, these requirements differ for lines located in various parts of the country. The type of terrain and the facilities that the line crosses also affect the strength and clearance requirements.

....

These requirements and recommendations are to be considered minimal in nature and should be modified as necessary to meet local operating conditions. Engineering judgment should be used to determine design criteria beyond minimum requirements which should provide for unusual conditions.

compliance with the National Electric Safety Code ("NESC") constitutes conduct in conformity with the minimum safety requirements of the electrical industry.

### A

Instruction 20 is defective for the simple reason that it creates a rebuttable presumption that compliance with the NESC is equivalent to "accepted good engineering practice in the electric industry." In my opinion, it is only the use of this phrase that renders Instruction 20 flawed because the characterization of a party's compliance with industry standards as congruent with "accepted good engineering practice" finds support in neither statutory nor common law.

It is clear, however, that the common law rule recognizes that compliance with accepted industry standards amounts to conduct corresponding to the minimum safety requirements of a given industry. *See, e.g., Meisner v. Patton Elec. Co., Inc.,* 781 F.Supp. 1432 (D.Neb.1990); *Kirkendall v. Harbor Ins. Co.,* 698 F.Supp. 768 (W.D.Ark.1988), *aff'd,* 887 F.2d 857 (8th Cir.1989). *See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 36, at 233 (5th ed. 1984), and *Restatement (Second) of Torts* § 288C cmt. a (1965). Furthermore, the provisions of the NESC have been specifically recognized as the accepted industry standards for the electrical industry. *See, e.g., Cerretti v. Flint Hills Rural Elec. Coop. Ass'n,* 251 Kan. 347, 837 P.2d 330 (1992); *Martel v. Montana Power Co.,* 231 Mont. 96, 752 P.2d 140 (1988); *Sulpher Springs Valley Elec. Coop., Inc. v. Verdugo,* 14 Ariz.App. 141, 481 P.2d 511 (1971); *Kemp v. Wisconsin Elec. Power Co.,* 44 Wis.2d 571, 172 N.W.2d 161 (1969); and *Gladden v. Missouri Public Serv. Co.,* 277 S.W.2d 510 (Mo.1955).

Thus, I am of the opinion that on retrial, Yampa Valley is entitled to an instruction which is identical to Instruction 20 with the offending phrase "accepted good engineering practice in the electric industry" eliminated and replaced with the phrase "the minimum safety requirements of the electric industry."

Therefore, I specially concur.